[Crim. No. 11604. Fourth Dist., Div. One. Feb. 13, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JAMES McINTYRE, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz and David A. Kay, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COLOGNE, Acting P. J.**—Michael James McIntyre was charged with forcible rape (Pen. Code, § 261, subd. 2),[1] forcible oral copulation (§ 288a, subd. (c)) and two counts of first degree burglary (§ 459). After a jury trial, he was found guilty on all counts and the burglaries fixed at first degree. Proceedings were suspended and on January 3, 1979, McIntyre was committed to Patton State Hospital as a MDSO for a maximum period of five years.

McIntyre escaped from Patton State Hospital and while free committed a series of robberies and an auto theft. The commitment to Patton was recalled. While in the hospital recovering from gunshot wounds received during the commission of one of those crimes, he escaped again and committed two more robberies, auto theft and receiving stolen property. Pursuant to a plea bargain, McIntyre pleaded guilty to two counts of robbery with gun use (§§ 211, 12022.5), one count of escape (§ 4532, subd. (b)) and one count of robbery with gun use (§§ 211, 12022.5), and the parties agreed the sentence under all five of the superior court case numbers would not be less than 11 nor more than 14 years in state prison.

■ ■ ■ ■ On October 25, 1979, McIntyre was sentenced to prison for 13 years and he appeals.[2]

On April 27, 1978, Rebecca C., manager of a Dairy Queen in El Cajon, called McIntyre in response to an ad he placed in the newspaper

---

[1] All references are to the Penal Code unless otherwise specified.

[2] The People argue we have no jurisdiction over McIntyre because of his escape during which a timely appeal could have been dismissed (see *People* v. *Buffalo* (1975) 49 Cal.App.3d 838, 839 [123 Cal.Rptr. 308]). McIntyre was in custody at all times pertinent to his commitment and sentencing to prison as well as during at least a portion of the running of the 60-day time limit originally applicable to this appeal. Since it appears from the record McIntyre's case falls within the rule of *In re Benoit* (1973) 10 Cal.3d 72 [109 Cal.Rptr. 785, 514 P.2d 97], due to noncompliance with rule 250, California Rules of Court, and misadvice from counsel, we address the issues raised by him.

seeking a buyer for certain stereo components. She left her name and phone number and the next day he called saying he would stop by and discuss the sale with her. He came to the shop and had a brief discussion, but she had to leave.

Later that day at about 4 p.m., McIntyre came back and talked to Rebecca. She explained she was about to quit for the day and, at his suggestion, she permitted him to follow her home to talk more about the speakers. Once inside her apartment, his conversation turned to his tan, eyes and dance moves. She became concerned and called a woman friend to come over, which she did. Both the friend and McIntyre left but he returned about 10 p.m. that evening, after she had gone to bed, entering through an open window. She told him to leave and he did.

Rebecca told the people at work of the incident, but did not report it to the police.

On April 30, McIntyre came to the shop and asked for Ms. C., but she hid and the other employees told him she was not around. He left but returned about 15 minutes later and was abusive in his language. She asked Tim Cook and Nancy Wittmeyer, Dairy Queen employees, to see her home that night because she was afraid, and they did.

They arrived at the apartment about midnight. While Tim and Nancy were still there, McIntyre called and Tim answered the phone. McIntyre asked for Becky and started to curse, at which point Tim hung up.

Rebecca went to bed and was later awakened by someone on top of her. He told her she was going to get what she deserved, hit her, forced her to orally copulate him, raped her and forced a second act of oral copulation. When he stood up, she recognized him. McIntyre threatened to come back if she called the police. The following day, Rebecca told her supervisor and Nancy she had been raped by the man who tried to sell the speakers. Because of McIntyre's threat, she did not call the police.

On May 24, 1978, Nancy visited Rebecca and, while they went to the laundry in her apartment, their purses were taken from the breakfast bar where they had left them. They called the police. Rebecca reported the rape to the officer investigating the burglary. The purses were found in McIntyre's car by a friend who had been working on it. Police arrest-

ed McIntyre pursuant to a warrant and, after giving him his *Miranda* warning, he admitted the burglary but denied the rape.

■ McIntyre first contends the trial court erred in not granting a mistrial or substituting the alternate juror after it was learned one juror "committed misconduct by reading part of a prejudicial newspaper article."

After the jury had begun its deliberations and had been excused for the weekend, an article appeared in a local paper about the trial. It must be conceded the article was potentially prejudicial. It indicated the distraught rape victim had been hospitalized as a result of fainting from tension, and near the end of the article reported she had exclaimed: "What if he gets out and kills me." The jury had been admonished not to read any such article or watch any television or radio newscasts of the trial. When trial resumed on Monday, counsel for the defendant moved for a mistrial. The court denied the motion because there was no evidence at that point any juror had seen the story.

After the jury was brought in, the judge inquired whether anyone had seen the article and juror Parker said he had seen the story and started reading it without realizing what it was about. He read only the first sentence and a few words of the second sentence when it came to him the article was about this trial. He immediately stopped reading at the point where the article referred to a 28-year-old El Cajon woman. That part of the article he read did not state the victim's name, reading: "A rape victim, distraught because a jury had trouble reaching a verdict in the trial of her alleged assailant, was hospitalized yesterday after she fainted in a courtroom hallway and struck her head on the cement floor.

"After falling to the floor, the 28-year-old El Cajon woman . . . ." Parker said he could not recall the caption or the content of any part of the article, even the portion he read, except the reference to the 28-year-old El Cajon woman. He asserted it did not influence him in any way and he felt he could be fair.

The court offered defense counsel the opportunity to question Parker further and counsel stated he was satisfied. After Parker left the room, the court inquired of counsel: "Anything either of you have to say?" and McIntyre's counsel said "[n]othing further, your Honor."

The original motion was made on a showing (stipulation) only that the article appeared in the paper and without a showing of any misconduct by a juror. The motion was properly denied. As was appropriate, the trial judge pursued the issue and, because the article had appeared in a local newspaper, made inquiry of the jurors. The judge's questions of Parker revealed the reading was inadvertent and only amounted to a reading of a single, full sentence and part of another. The juror could not remember anything of the substance of the article or the caption. This provided adequate basis for finding there was no prejudice overcoming the presumption to the contrary from juror misconduct (see *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156-157 [141 Cal.Rptr. 698, 570 P.2d 1050]; *People* v. *Pierce* (1979) 24 Cal.3d 199, 207-209 [155 Cal.Rptr. 657, 595 P.2d 91]).

Of significance, after Parker had been examined, McIntyre made no motion for mistrial or request for a substitution of the alternate juror. There was an alternate juror and, had McIntyre made the request at this time when there was the suggestion of misconduct on the record, the court could have formally ruled on the matter after the evidence was in and cured the problem. McIntyre's silence following the judge's invitation to make a protest of Parker's conduct, renew the motion, or seek placement of the alternate juror constitutes a waiver of the right. He is not privileged to make that argument now for the first time on appeal (see Witkin, Cal. Criminal Procedure (1963) § 747, p. 721).

■ McIntyre next contends the court erred by giving CALJIC No. 10.21 because that instruction had been covered in CALJIC No. 2.27 and, by giving both, unduly emphasized there was no corroboration needed. ■ While generally a defendant is held to waive the right to appeal alleged errors by failing to make an appropriate objection in the trial court, an appellate court may review any instruction given even though no objection was made in the lower court if the substantial rights of the defendant are affected (Pen. Code, § 1259; *People* v. *Arredondo* (1975) 52 Cal.App.3d 973, 978 [125 Cal.Rptr. 419]). We will examine the claimed error in this instance notwithstanding the questionable nature of McIntyre's general objection to giving CALJIC No. 10.21 without stating his reasons therefor.

■ CALJIC No. 2.27, as given by the trial court, reads as follows: "Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact required to be established by the prosecution to be proved solely by the testimony of

such a single witness, you should carefully review all the testimony upon which the proof of such fact depends."

CALJIC No. 10.21, as given by the court, reads: "It is not essential to a conviction of a charge of rape that the testimony of the witness with whom sexual intercourse is alleged to have been committed be corroborated by other evidence."

It is apparent CALJIC No. 2.27 refers to reliability of all witnesses' testimony in proving a fact. CALJIC No. 10.21, on the other hand, deals with the need (or lack of it) for corroboration of the victim's testimony in the act constituting the crime of rape.

While certain crimes require corroboration (obtaining money under false pretenses, Pen. Code, § 1110; perjury, Pen. Code, § 1103a; abortion, Pen. Code, § 1108), rape does not. It is not appropriate, of course, to instruct that corroboration is not necessary in all other crimes, but rape has some special features which make such an instruction on lack of corroboration most proper. The proof of the elements of this crime often turns on a credibility contest between the accused and the accuser alone, since the act is most often committed in private (see *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 881 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845]). Permitting a jury to operate under the misconception corroboration is required would put the value of the victim's testimony on a level below that of the defendant's testimony, credibility aside, and that is not the law. We hold CALJIC No. 10.21 is proper in combination with CALJIC No. 2.27.

In any event, we believe the instruction correctly states the law, a matter McIntyre concedes, and is not so repetitious on the subject of a witness' testimony as to give undue emphasis to the victim-witness' testimony and be prejudicial to him. We note we cannot accept McIntyre's assertion *Rincon-Pineda, supra,* disapproved CALJIC No. 10.21 sub silentio. We conclude, moreover, even if error exists, it does not require reversal (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]).

McIntyre next contends since the amended information charges only one offense of oral copulation and the victim testified there were two separate and distinct offenses, one before and one after the rape, the trial court erred in not giving *sua sponte* CALJIC No. 17.01.

CALJIC No. 17.01 reads as follows: "The defendant is charged with the offense of —. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, *all the jurors must agree that he committed the same act or acts*. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict." (Italics added.)

■ Where the jury is made aware by the court at the outset of the trial of the fact the defendant is accused of committing each of several crimes on some unspecified dates, the state must select the particular act upon which it relies for the allegation in the complaint or the jury must be instructed they must agree upon the particular act involved (*People* v. *Alva* (1979) 90 Cal.App.3d 418, 424 [153 Cal.Rptr. 644]).

■ As described by the court in *Alva*, in the leading case in California concerning the problem before us, *People* v. *Castro* (1901) 133 Cal. 11 [65 P. 13], the prosecutor alleged the defendant on June 30, 1899, committed the crime of rape of a woman under the age of consent, now known as unlawful sexual intercourse. At trial, evidence was presented showing the commission of four separate acts of sexual intercourse. These acts occurred over a period of several months. None of the acts occurred on June 30, 1899. In upholding the trial court's order granting a new trial, the Supreme Court commented as follows: "Under the *instructions* given to the jury in the case at bar, the defendant should have been convicted, if any one of the various acts of intercourse sworn to by the prosecutrix was established beyond a reasonable doubt; but, certainly, the defendant was not called upon to defend himself against all of these respective acts of intercourse, extending through a period of several months. The information only charged one act, and upon that allegation the case must stand or fall. Possibly, any one of the acts sworn to by the prosecutrix could have been selected by the state as the act charged in the pleading, but the entire four acts could not be so selected. The state, at the commencement of the trial, should have been required to select the particular act upon which it relied to make good the allegation of the information. This was not done; and even conceding that the failure to make such election at that time did not constitute error because of the want of demand upon the part of the defendant to make the election, still, when the case went to the jury, the court, in some form, should have directed their minds to the particular act of intercourse which it was incumbent upon the state to establish by the evidence, before a verdict of guilty could be returned against the

defendant. This was not done." (*People* v. *Castro, supra*, 133 Cal. at pp. 12-13.)

Further, as described by the court in the *Alva* case, *supra*, in *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323], the Supreme Court had before it another case involving a charge of statutory rape in which the prosecutor introduced evidence of uncharged acts of sexual intercourse involving the same victim. The trial court instructed the jury that if the jury found defendant had sexual intercourse with the prosecutrix at any time within three years before the filing of the indictment, they must find him guilty. In support of its order reversing the judgment of conviction, the Supreme Court observed at page 168: "Each of these acts was a separate offense, and the defendant could be tried for either, and separately for each of them. *The jury were not even told that they must all agree that some specifically described act had been performed.* A verdict of guilty could have been rendered under such an instruction, although no two jurors were convinced beyond a reasonable doubt, or at all, of the truth of the charge, as to any one of these separate offenses. Even worse than that was possible. As to every specific offense which there was an attempt to prove, and which could be met by proof, the defendant may have established his defense, and yet upon the general evidence of continuous crime, which, in the nature of things, he could only meet by his personal denial, he may have been convicted. And how could he defend when he was not informed as to what particular offense, out of the hundreds testified to by the prosecutrix, he was to be tried? Such a trial, upon a charge so indefinite as to circumstance of time or place, or any particular, except by the general designation, would be a judicial farce, if it were not something a great deal worse." (Italics added.)

In *People* v. *Alva, supra*, 90 Cal.App.3d 418, the evidence showed a number of sexual acts over a period between February 1977 and July 1977, and the jury was never informed of the specific act upon which the state intended to rely. The jury was never instructed they must agree on the specific act. The court held while there is a presumption that in the absence of an election of acts relied on, the offense as to which evidence is first introduced is deemed to constitute the offense charged, this presumption can be used only where the jury is informed of it or an instruction must be given that they must all agree the defendant committed the same act to find him guilty.

In all these cases, however, the date of the act relied upon as constituting the crime being prosecuted is not specified in the presentation of the case during a trial that shows multiple acts on multiple dates any one of which could constitute the crime, and the defendant is required to defend against the crime on each date, an essentially impossible task. The uncertainty results from the inability to determine whether there is unanimity of thought as to the particular date on which the offense was committed. Here, the specific date is alleged and the two acts of oral copulation took place within a matter of minutes.

McIntyre's reliance on *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63], is misplaced. It does not stand for the proposition that there are two separate crimes if a defendant forcibly requires his victim to orally copulate him twice on a particular evening.[3] Rather, it simply states that the defendant who attempts to achieve sexual gratification by committing a variety of base criminal acts on his victim is not doing so with a single intent or objective and may be subject to punishment for each particular offense, notwithstanding Penal Code section 654.

Here, we find a rape and an oral copulation occurring on the evening of April 30, 1978, as a part of a single event, clearly permissibly punishable as separate offenses under *Perez, supra*. The fact that a second forced oral copulation occurred within a few minutes during this sexual attack does not necessarily make this another separate crime any more than it would be true there are separate crimes of battery if the actor throws a right-hand punch to his victim and immediately follows it with a left-hand punch. Similarly, if only one punch lands on the victim, the law does not require the jury to agree on whether it was the right or the left-hand punch which reached its mark. Whether there was an offense of oral copulation on that particular evening does not depend on whether the jury is in accord it was committed at 12:30 or 12:35 a.m. It is only incumbent they agree an oral copulation occurred on that date, the exact time or sequence in relation to the rape is not material (see

[3]In *Perez, supra*, all the crimes were committed on a single occasion and, while there were convictions of two counts of oral copulation, there was evidence he forced the victim to orally copulate him twice and he orally copulated her once. Thus there were two kinds of oral copulation which support the two convictions without considering whether the second oral copulation of him was one of the crimes of which he was convicted. Similarly, there were two acts of vaginal intercourse but only one rape conviction. In any event, the issue raised in the case at bench was not raised or decided in *Perez*.

*People* v. *Lawrence* (1956) 141 Cal.App.2d 630, 632-633 [297 P.2d 144]).[4]

Even if we were to hold the instruction was erroneously omitted, in light of the fundamental credibility determination involved in the victim's testimony as to the nature of the April 30 events versus the defendant's testimony he was not there at all on that night, there is no reasonable probability of a different result had CALJIC No. 17.01 been given. The jury unanimously believed the victim's account of the attack, which consisted of a forcible oral copulation, a forcible rape and a forcible oral copulation.

McIntyre contends the court erred in not granting his pretrial *Ballard* motion. The court has discretion to order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents a compelling reason for such an examination (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176-177 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]). Discretion means a sound judicial discretion enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free of partiality, not swayed by sympathy nor warped by prejudice nor moved by any kind of influence save alone the overwhelming passion to do that which is just (*People* v. *Russel* (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794]). We are not persuaded the trial court has failed to exercise its discretion in this case. McIntyre only points to arguments of the deputy district attorney and attempts to assert some of his statements which are in reality veiled efforts to inject personal knowledge into the record. Every use of the words "I think" or "I submit," however, does not constitute improper argument. The argument of counsel properly brings to the court's attention the relevant facts supporting a denial of the *Ballard* motion[5] and the record supports the propriety of a decision made by the court. The fact the court had stated it was inclined to grant the motion before hearing the People's argument and later in its ruling decided contrariwise, only strengthens the fact discretion was indeed exercised. McIntyre points to no evidence showing, nor does the record reveal, a compelling reason for a psychiatric examination of the complaining witness.

---

[4]We are not deciding the possibility of multiple convictions where an appreciable period of time transpires between the commission of sex offenses.

[5]The *Ballard* motion was denied without prejudice to renew during trial.

McIntyre also contends there was sentencing error and the People concede *Harvey* error did occur (see *People* v. *Harvey* (1979) 25 Cal.3d 754, 761 [159 Cal.Rptr. 696, 602 P.2d 396]). Under the circumstances, we feel it appropriate to remand for resentencing and we have every confidence this error will be rectified. Because the plea bargain is not for a specific number of years and leaves to the discretion of the court the exact number of years the court may impose, we believe it is appropriate for the court to state at the time of sentencing the reasons for imposing the upper or lower term, or consecutive sentences, if such be the case, in reaching the total time to be in prison where the time exceeds the minimum agreed upon.

The judgment of conviction is affirmed and the matter remanded for sentencing in conformity with the views expressed.

Staniforth, J., and Wiener, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 22, 1981.