[No. D002028. Fourth Dist., Div. One. Sept. 22, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE WILLIAMS ADAMS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*This opinion is certified for publication with the exception of sections I, II, IV, V and VI (Cal. Rules of Court, rule 976(b)).

76

**COUNSEL**

Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Michael D. Wellington, Rudolf Corona, Jr., and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—Ronnie W. Adams appeals a judgment convicting him of two counts of rape (Pen. Code,[1] § 261, subd. (2)—counts one and three), oral copulation (§ 288a, subd. (c)—count two), and burglary (§ 459—count four), each while personally using a deadly weapon (§§ 12022.3, subd. (a), 12022, subd. (b)). He contends the trial court erred in failing to rule on his Evidence Code section 352 motion, in its instructions, in its comments to the jury, and in several sentencing decisions. The court erred in imposing a full-term sentence for the oral copulation and in finding it lacked jurisdiction to resentence under section 1170, subdivision (d). We reverse the judgment as it pertains to these sentencing decisions, and affirm it in all other respects.

### STATEMENT OF FACTS

Adams visited the victim on one occasion, and asked when he would be able to make love to her. She told him "absolutely not," and he apologized and left. Fifteen minutes later he knocked, she opened the door, saw him holding a belt, and heard him say something she did not understand. The victim was a recent Eastern European immigrant and spoke little English. The belt frightened her and she told a couple who lived in the same complex and spoke her language about the incident. Adams told the police she looked at the belt and "kind of freaked out."

Later, in the early morning, Adams broke into the victim's apartment where the victim was alone and sleeping. Adams held a knife to her throat, repeatedly threatened to kill her, and raped her. During the rape, he was holding a knife, putting it to her throat at times. He then forced her to orally copulate him. During the oral copulation, she did not know where the knife was. He then raped her again, during which time she felt the knife at her foot.

The victim, barefoot, crying and wearing a blood-stained nightgown, immediately told persons in a nearby apartment that she was raped by the "belt man" and that he had held a knife to her throat. The couple and the victim telephoned an employee of Catholic Community Services (CCS) which helps refugees from Eastern Europe. About 9 or 10 a.m., the CCS employee took the victim to the hospital and interpreted her statement to the police. The victim stated she was threatened with a knife and forced to have sexual intercourse twice and oral sex once. The police officer noted the victim was upset, scared, crying, and in shock. The employee of CCS

---

[1]All statutory references are to the Penal Code unless otherwise specified.

observed her to be pale, frightened, nervous, in shock, and on the verge of a breakdown.

The victim's live-in boyfriend observed she cried constantly, was unable to have a meaningful conversation, and for about two weeks was withdrawn, nervous, and suffered digestive problems.

Adams was arrested and, before being told the reason for his arrest, he saw the word "sex offenders" in the office at the police station, and stated: "Does this involve that redhead? . . . I know her, yeah. She's weird." He also stated it was not the first time he had sex with the victim. After waiving his rights, he made a statement claiming the acts were voluntary. Adams' live-in girlfriend told the police Adams had called her from jail and said the victim had wanted $20 to have sex with her, and that she only orally copulated him.[2]

At trial, Adams admitted lying to his girlfriend, and to the police about having prior sex with the victim. He admitted bringing the knife to the victim's apartment, which he wore in a sheath hanging from his belt for protection, at a time he knew she would be alone. He denied force or threats.

Adams was sentenced to eight years (the upper term) for count one (rape); six years each (the middle terms) for counts two and three (oral copulation and rape); and six years (the upper term) for count four (burglary). Full, separate and consecutive terms were imposed for counts one, two and three and the term for count four was stayed. Three-year enhancements were imposed on counts one and two consecutively and on count three concurrently, and an imposed one-year enhancement was stayed on count four, for the personal use of a deadly weapon.

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . .

---

[2]At trial, Adams' girlfriend testified he only told her his arrest was about breaking into an apartment.

*See footnote, *ante,* page 75.

## III

THE TRIAL COURT HARMLESSLY ERRED IN FAILING TO INSTRUCT PER-
TAINING TO THE TESTIMONY OF A SINGLE WITNESS (CALJIC No. 2.27)

The trial court gave CALJIC No. 10.21, but failed to give CALJIC No. 2.27[4] sua sponte.

■ The People concede it was error not to give CALJIC No. 2.27 as required by *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 885 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845]. This error is compounded here by only giving CALJIC No. 10.21, stating the rape victim's testimony need not be corroborated, with no cautionary admonition akin to that in CALJIC No. 2.27. Giving CALJIC No. 10.21 without such an admonition unduly focuses the jury's attention on the victim's testimony, implies the victim's testimony has been singled out because it is to be treated differently than that of other witnesses, and, inferentially, that other witnesses (i.e., the defendant) may require corroboration. (*People* v. *Pringle* (1986) 177 Cal.App.3d 785, 789-790 [223 Cal.Rptr. 214].)

Adams further claims it is error to give CALJIC No. 10.21 at all, with or without CALJIC No. 2.27, since it gives the impression the victim's testimony is entitled to a special deference, affects the credibility contest in favor of the victim, and dilutes the "beyond a reasonable doubt" standard. Adams argues CALJIC No. 10.21 should be abolished along with CALJIC No. 10.22 (see fn. 5, *infra*), since the two were considered complementary instructions (*People* v. *Putman* (1942) 20 Cal.2d 885, 891-892 [129 P.2d 367], overruled in *People* v. *Rincon-Pineda, supra,* 14 Cal.3d at p. 882), and since the new CALJIC No. 2.27 contains both the noncorroboration rule and the cautionary instruction.

We recognize giving CALJIC No. 10.21 in combination with CALJIC No. 2.27 was approved in *People* v. *McIntyre* (1981) 115 Cal.App.3d 899, 906-907 [176 Cal.Rptr. 3], and *People* v. *Jamison* (1984) 150 Cal.App.3d 1167, 1172-1174 [198 Cal.Rptr. 407]. ■ However, the essence of CALJIC No. 10.21 is adequately stated in CALJIC No. 2.27 and there is no need for CALJIC No. 10.21 when No. 2.27 is given.

---

[4]CALJIC No. 2.27 provides: "Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact [required to be established by the prosecution] to be proved solely by the testimony of such a single witness, you should carefully review all the testimony upon which the proof of such fact depends."

CALJIC No. 10.21 was given as follows: "It is not essential to a conviction of a charge of rape that the testimony of the witness with whom sexual intercourse is alleged to have been committed be corroborated by other evidence."

CALJIC No. 2.27 states: "Testimony which you believe given by one witness is sufficient for the proof of any fact. . . ." CALJIC No. 10.21 states: "It is not essential to a conviction of a charge of rape that the testimony of the witness with whom sexual intercourse is alleged to have been committed be corroborated by other evidence." When the jurors apply CALJIC No. 2.27 to the crime of rape, it tells them the testimony of the rape victim is sufficient to prove the crime of rape, the same message in CALJIC No. 10.21.

We disagree with the rationale of *McIntyre* and *Jamison* that CALJIC No. 10.21 is needed to prevent the jury from erroneously believing the victim's testimony must be corroborated to sustain a conviction. (*People* v. *McIntyre, supra,* 115 Cal.App.3d at pp. 906-907; *People* v. *Jamison, supra,* 150 Cal.App.3d at pp. 1172-1173.) There are only a few crimes for which a conviction cannot be obtained on the sole testimony of a single witness. In these cases (perjury, § 118; abortion, § 274; false pretenses, § 532), jurors are instructed on the need for corroboration. We are satisfied even when the case turns on a credibility contest between the victim and the defendant, CALJIC No. 2.27 informs the jury the victim's testimony, if believed, is enough to prove the crime.

█ We conclude the better practice is to eliminate CALJIC No. 10.21 even when accompanied by CALJIC No. 2.27 to avoid the prejudicial inference that a rape victim's testimony, covered specifically in CALJIC No. 10.21, may be accepted without careful review, whereas the defendant's testimony, covered generally in CALJIC No. 2.27, must be more scrupulously examined for credibility.

█ Here, however, the trial court's error was harmless. The evidence clearly points to guilt, and the victim's testimony is amply corroborated. (*People* v. *Rincon-Pineda, supra,* 14 Cal.3d at p. 872.)[5]

The victim's testimony here was corroborated by her neighbors, the CCS employee, and the police regarding her demeanor and statements immediately after the rape. Adams' admitted pretrial lies about the incident (i.e., telling the police officer this was not the first time he had sex with the victim and telling his girlfriend he did not have intercourse with the victim),

---

[5]*Rincon-Pineda* was reviewing the failure to give the now abolished instruction in CALJIC No. 10.22, but the standard is equally applicable to the error here. *Rincon-Pineda* abolished the use of CALJIC No. 10.22 which had stated: "'A charge such as that made against the defendant in this case is one which is easily made and, once made, difficult to defend against, even if the person accused is innocent. [¶] Therefore, the law requires that you examine the testimony of the female person named in the information with caution.'" (*People* v. *Rincon-Pineda, supra,* 14 Cal.3d at p. 871.)

his unsolicited question to the police as to whether his arrest involved "the redhead," and his admissions (he had sexual intercourse with her and she did not seem very responsive after the act), all support a finding of guilt. The evidence of guilt was strong, and it is not reasonably probable a result more favorable to Adams would have been reached in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The trial court properly instructed regarding the credibility of witnesses and the weighing of conflicting testimony, the other two instructions required by *People* v. *Rincon-Pineda, supra,* 14 Cal.3d at pages 884-885. The jury was told it was the exclusive judge of credibility; it should consider witnesses' demeanor, capacity and opportunity to perceive, bias, consistent and inconsistent statements, etc., in assessing credibility; and reach its decision based not on the relative number of witnesses, but on the relative convincing force of the evidence. (See CALJIC Nos. 2.20 and 2.22.) The inclusion of these instructions supports our conclusion of harmless error.

IV-VI*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment is reversed as to the sentence and remanded for resentencing in accordance with this opinion. The judgment is affirmed in all other aspects.

Kremer, P. J., and Wiener, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 31, 1986.

*See footnote, *ante,* page 75.