[No. F008223. Fifth Dist. Apr. 1, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH BLASSINGILL, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Harvey Zall, Acting State Public Defender, and David Y. Stanley for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HAMLIN, Acting P. J.—Defendant appeals from a judgment on a jury verdict convicting him of two counts of forcible rape (Pen. Code, § 261, subd. (2)),[1] two counts of battery (§ 242) and one count of false imprisonment (§ 236). Defendant was sentenced to state prison for the upper term of eight years on one rape conviction, to a full consecutive eight-year upper term on the second rape conviction, and to concurrent county jail terms on the three misdemeanor convictions. He contends his convictions must be reversed because the trial court erred in instructing the jury and in permitting the jury to take notes without a proper admonition. We find defendant's contentions meritless and will affirm the judgment.

### STATEMENT OF FACTS

On February 13, 1986, 20-year-old Rosemary L. was working at the Creative Arts Center in Visalia, a center for developmentally disabled adults, when defendant, defendant's wife, Rosetta Blassingill, and their infant daughter came to visit her around noontime. Rosetta is Rosemary's sister. Defendant and Rosetta talked to Rosemary about going to Fresno so that Rosemary could be with her sister. At the same time, defendant told Rosemary she owed him money for some bills. He then told Rosemary to collect the project she was working on and to get into his car. Rosemary complied without telling defendant she did not want to go with him because she knew he had a terrible temper and she was afraid.

When they arrived in Fresno, defendant and Rosetta took Rosemary to the Social Security office, where Rosemary signed an authorization for Rosetta to become the payee on Rosemary's social security check. The group then went to the Fresno apartment where defendant and Rosetta lived. She did not ask to be returned to her residence with her care provider in Tulare because she knew defendant and Rosetta would not take her back.

Defendant's apartment had a single bedroom, which is where Rosemary slept. Defendant, Rosetta, and the child slept in the living room. Since Rosemary had only one change of clothes with her when she was brought from Visalia, she was arranging to borrow some of Rosetta's clothing when defendant came into the bedroom and started talking to Rosemary about having sex and about her being a virgin. Rosemary did not say anything because she was afraid of defendant. After defendant spoke to her about sex, Rosemary got dressed and left the bedroom, but defendant later directed her to go back into the room and told her to get undressed. Rosemary

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

complied so defendant would not hit her. At his instruction, Rosemary got into the bed. Defendant was speaking to her in a mean voice. Defendant, who was also undressed, had intercourse with Rosemary, and she testified she could not get away because defendant was "leaning on [her] hard." Rosemary said nothing to defendant nor did she tell him she did not want to have sex with him because she was afraid of him. The next day Rosemary noticed spots of blood on the sheets.

On a different day, defendant accomplished a second act of intercourse with Rosemary to which she again submitted out of fear. The circumstances were similar to those already described. Rosemary did not want to have sex with defendant but did not tell him so because she was afraid of him. Rosemary was not sure if defendant had sex with her more than twice.

Martha Loring, a licensed care provider for Central Valley Regional Center, testified that she had picked up Rosemary from defendant's apartment on April 4, 1986. Defendant called Loring later in an attempt to get some of Rosemary's money. He claimed he had bought Rosemary food, had paid her doctor bills, and had done other things for her. He also told Loring that his wife, Rosetta, had even told Rosemary she could sleep with defendant so that Rosemary would not have "to go out in the streets and get it." Loring later let Rosemary talk to defendant while Loring was on an extension and heard defendant tell Rosemary he would "get" her for refusing to pay him what he claimed she owed him. Defendant told Rosemary to consider his family, Rosemary's sister and niece, as dead to her.

Dr. Markham Kirsten, a psychiatrist, interviewed Rosemary and described her as of borderline intellectual functioning. He found that Rosemary was well able to relate what was happening to her and described her as "a consistent person in telling [Kirsten] what was happening in the world around her." She manifested reluctance in discussing what had happened with defendant, but she seemed to understand the difference between what had happened with him, i.e., "[h]e took me over," and what she described as love between men and women.

At trial, defendant denied ever having sexual intercourse with Rosemary. He acknowledged that he had examined her breasts on several occasions, always in Rosetta's presence, after Rosemary complained of pain in her breasts from fibrocystic breast disease. Rosetta corroborated most of defendant's testimony, but some of her testimony was inconsistent with what she had told Carla Riba, an investigator.

## Discussion

I. *Did the trial court err in instructing the jury with CALJIC No.
2.21 (4th ed. 1979)?*

 Defendant first contends the trial court erred in giving the jury
CALJIC No. 2.21, an instruction requested both by the People and by
defendant. As actually instructed, the jury was told: "A witness willfully
false in one material part of his testimony is to be distrusted in others. You
may reject the whole testimony of a witness who willfully has testified
falsely as to a material point unless from all the evidence you shall believe
the probability of truth favors his testimony in other particulars. However,
discrepancies in a witness' testimony or between his testimony and that of
others, if there were any, do not necessarily mean that the witness should be
discredited. Failure of recollection is a common experience, and innocent
misrecollection is not uncommon. It is a fact also that two persons witness-
ing an incident or a transaction often will see or hear it differently.

"Whether a discrepancy pertains to a fact of importance or only to a
trivial detail should be considered in weighing its significance."

 The People urge that defendant is precluded from asserting this
instructional error on appeal since he requested the instruction at trial.
However, as the California Supreme Court affirmed in *People* v. *Wicker-
sham* (1982) 32 Cal.3d 307, 332 [185 Cal.Rptr. 436, 650 P.2d 311]: " ' "Nev-
ertheless, error is nonetheless error and is no less operative on deliberations
of the jury because the erroneous instruction may have been requested by
counsel for the defense. . . ." Accordingly, if defense counsel suggests or
accedes to the erroneous instruction because of neglect or mistake we do not
find "invited error"; only if counsel expresses a deliberate tactical purpose
in suggesting, resisting, or acceding to an instruction, do we deem it to
nullify the trial court's obligation to instruct in the cause.' [Citation.]"

As defendant points out in his reply brief, little tactical purpose can be
discerned from a checkmark on a form jury instruction. While we are not
unsympathetic with the People's argument that this manner of requesting a
jury instruction would be an adequate basis on which to rest a claim of error
were the instruction refused, arguably presenting the trial court with some-
thing of a Hobson's choice in ruling on the instruction, we are constrained
to follow the clear language of the Supreme Court in *People* v. *Wickersham,
supra*. We therefore conclude the propriety of giving CALJIC No. 2.21 is
properly reviewable on appeal.

 Defendant contends the effect of CALJIC No. 2.21 "is to alter the
burden of proof by negating all exculpatory evidence presented through the

testimony of a defendant if the jury finds somewhere in his testimony a deliberate falsehood on a material point, even if it is on an isolated rather than determinative issue." Without explaining how a deliberate falsehood on a *material* point can fail to impact upon a determinative issue, defendant relies upon dictum in *People* v. *Lescallett* (1981) 123 Cal.App.3d 487, 493 [176 Cal.Rptr. 687], in which the court suggested that CALJIC No. 2.21 might "be avoided where, under the circumstances of the case, it might appear to be directed principally toward a defendant's exculpatory testimony." In *Lescallett* the court's anticipation of a problem in giving CALJIC No. 2.21 was dictum because the defendant had not testified. Defendant here argues that since he did testify, the harm anticipated in *Lescallett* actually occurred in his case, and thus the giving of CALJIC No. 2.21 was error. The precise argument defendant now advances was rejected in *People* v. *Reyes* (1987) 195 Cal.App.3d 957, 965-966 [240 Cal.Rptr. 752], and in *People* v. *Johnson* (1986) 190 Cal.App.3d 187, 193-194 [237 Cal.Rptr. 479].

Defendant urges this court to diverge from the reasoning of *People* v. *Johnson, supra,* and *People* v. *Reyes, supra,* contending the courts in those cases "glossed over the critical point" in concluding that CALJIC No. 2.21 applied evenhandedly to all witnesses. Defendant identifies this critical point as the impact CALJIC No. 2.21 has on testimony offered by a defendant. Defendant argues that the first paragraph of the jury instruction "shifts by its express terms to the defendant an obligation to prove to the jury that he or she is generally truthful in some overall sense." This is not what the instruction provides nor is it what the courts in *Reyes, supra,* and *Johnson, supra,* recognized.

As the court in *People* v. *Johnson, supra,* 190 Cal.App.3d 187 pointed out, a jury which determines that a testifying defendant has intentionally lied in a material part of his testimony *may,* but is not required to, reject the whole of a defendant's testimony. The jurors need not reject the testimony "if, from all of the evidence, they shall believe the probability of truth favors his testimony in other particulars." (*Id.* at p. 194.) Obviously a jury finding that a defendant had been willfully false in a material part of his testimony yet finding all of the prosecution witnesses wholly lacking in credibility could therefore conclude that the probability of truth favored the defendant's testimony. Under such circumstances, the defendant has shouldered no burden. Thus CALJIC No. 2.21 does nothing more than explain to a jury one of the tests they may employ in resolving a credibility dispute. Defendant's characterization of CALJIC No. 2.21 as "greasing the skids" to facilitate dumping the entirety of a defendant's testimony from the scales of justice is colorful but not persuasive.

To the extent defendant suggests that CALJIC No. 2.21 should be tailored by deletion of the first paragraph and modification of the second

paragraph when a defendant has taken the stand, defendant approaches the area of pinpoint jury instructions that are necessarily a subject for appropriate *requested* modification of approved CALJIC instructions. Simply because a defendant testifies, it is not reasonable in all circumstances to assume the first paragraph of CALJIC No. 2.21 should not be given. Since the instruction applies to all witnesses, a defendant who is assured of the truthfulness of his own testimony but well aware that one or more prosecution witnesses has been caught in an inconsistency might well insist upon the full approved text of CALJIC No. 2.21 being given to the jury. A defendant, on the other hand, who feels the first paragraph will call unnecessary attention to inconsistencies in his own testimony might seek appropriate modification of CALJIC No. 2.21. A judge who is persuaded that the instruction would focus upon and call into question the defendant's testimony might well consider such a modification.

The instant case is not, however, one in which defendant requested the trial court to modify CALJIC No. 2.21, but rather a case where defendant seeks reversal of his conviction by arguing the trial court should have done so sua sponte. In light of the case law upholding the validity of CALJIC No. 2.21, and what we consider to be the persuasive rationale of those cases, we reject defendant's argument.

II. *Did the trial court err in instructing the jury with CALJIC No. 10.21 (1970 rev.)?*

■ Defendant next contends the trial court erred in instructing the jury pursuant to CALJIC No. 10.21 since this instruction also impermissibly alters the burden of proof. As given to the jury, CALJIC No. 10.21 provides, "It is not essential to a conviction of a charge of rape that the testimony of the witness with whom sexual intercourse is alleged to have been committed be corroborated by other evidence." The jury was also instructed with CALJIC No. 2.27 (1977 rev.), advising them: "Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact required to be established by the prosecution to be proved solely by the testimony of such a single witness, you should carefully review all the testimony upon which the proof of such fact pertains [sic]." Finally, the jury was instructed with CALJIC No. 2.20 (1980 rev.) on the credibility of witnesses and CALJIC No. 2.22 (1975 rev.) on weighing conflicting testimony. Thus the jurors were instructed that they were the sole judges of a witness's credibility and the weight to be given to the testimony of each witness; they were instructed as to the factors that could be considered in gauging the credibility of a witness; and they were instructed that the relative number of witnesses was not the critical factor for them to consider but rather the relative convincing force of the evidence.

Defendant now contends the giving of CALJIC No. 10.21 was prejudicial error since "the impact of this instruction was to indicate to the jury that the testimony of Ms. [L.] was subject to less scrutiny than the testimony of other witnesses. That is, since nowhere else in the instructions was the jury told that the testimony of any witness required corroboration, singling out Ms. [L.]'s testimony as *not* requiring corroboration created the inference that the testimony of other witnesses (such as Mr. Blassingill) *did* require corroboration."

In advancing this argument, defendant places primary reliance upon two recent cases from the Fourth District Court of Appeal, *People v. Adams* (1986) 186 Cal.App.3d 75 [230 Cal.Rptr. 588] and *People v. Pringle* (1986) 177 Cal.App.3d 785 [223 Cal.Rptr. 214]. In *Pringle,* the trial court failed to instruct the jury with CALJIC No. 2.27 but did instruct with CALJIC No. 10.21 which, as the court noted, contains no cautionary admonition like that found in CALJIC No. 2.27, reminding the jurors to "carefully review all the testimony upon which the proof of such fact depends." In *Adams,* the court concluded that it is "the better practice . . . to eliminate CALJIC No. 10.21 even when accompanied by CALJIC No. 2.27 to avoid the prejudicial inference that a rape victim's testimony, covered specifically in CALJIC No. 10.21, may be accepted without careful review, whereas the defendant's testimony, covered generally in CALJIC No. 2.27, must be more scrupulously examined for credibility." (*People v. Adams, supra,* at p. 80.)

Since the trial court instructed the jury in this case with both CALJIC Nos. 2.27 and 10.21, the People rely upon two older cases from the Fourth District, *People v. Jamison* (1984) 150 Cal.App.3d 1167 [198 Cal.Rptr. 407] and *People v. McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3]. In *McIntyre,* the court concluded that CALJIC No. 10.21 was a correct statement of the law and was "not so repetitious on the subject of a witness' testimony as to give undue emphasis to the victim-witness' testimony and be prejudicial to [the defendant]." (*Id.* at p. 907.) The court in *People v. Adams, supra,* expressly disagreed with the rationale underlying *People v. McIntyre, supra,* and *People v. Jamison, supra,* insofar as the earlier cases held CALJIC No. 10.21 necessary to "prevent the jury from erroneously believing the victim's testimony must be corroborated to sustain a conviction" (*People v. Adams, supra,* 186 Cal.App.3d at p. 80), holding instead that CALJIC No. 2.27 adequately informed the jury that the victim's testimony, if believed, was sufficient to sustain a conviction.

Interesting as this debate may be, we must note that none of the four cases discussed above has considered the import of the decision of the California Supreme Court in *People v. Akey* (1912) 163 Cal. 54 [124 P. 718],

where the court unequivocally approved the trial court's instruction of the jury in the following language: " 'The court further instructs the jury that it is not essential to a conviction in this case that the testimony of the prosecutrix, Lutie Valentine, should be corroborated by other evidence. It is sufficient if you believe beyond a reasonable doubt from all the evidence in the case that the crime charged has in fact been committed as alleged.' " (*Id.* at p. 55.) The court rejected the defendant's claim that this instruction singled out and gave special importance to the testimony of the complaining witness. ■ Moreover, having noted that it perceived "nothing in the first sentence which in itself is open to any valid criticism," (*Akey, supra,* at p. 56) the court further observed that the propriety of jury instructions must be evaluated in light of the entire charge of the court, as it would have been understood by persons of ordinary intelligence. The court then stated: "One of the controlling features in determining the character of an instruction is the purpose and object of the court in giving it. Here the sole purpose and object clearly was to inform the jury, as it is always proper in this class of cases to do, that there was no rule of evidence in this state which required that the testimony of the prosecuting witness should be corroborated. Accompanying this declaration of the rule, and as part of the same instruction embodying it, the jury were told that in order to convict the defendant it was necessary that they 'believe beyond a reasonable doubt from *all* the evidence in the case that the crime charged had been committed as alleged.' When a jury is told that they are to act upon a belief to be derived from a consideration of all the evidence in the case, they, as men of ordinary intelligence and good sense, understand that this necessarily involves a determination by them of the credence they are to give to the testimony of the various witnesses in the case and the weight they may attach to their testimony." (*People* v. *Akey, supra,* 163 Cal. at p. 57.)

■ Although as defendant has pointed out, there may be less likelihood today than there was in 1912 that a jury would mistakenly believe the law required a rape victim's testimony be corroborated, there remains the very strong likelihood that a rape victim who survived the attack without "benefit" of corroborating physical injuries or who delayed in reporting the offense would find her testimony the subject of vigorous attack in cross-examination and in defense argument simply because of this absence of corroborating evidence. Taking not only these circumstances but the entire charge given to the jury into consideration and evaluating them in light of the Supreme Court's opinion in *People* v. *Akey, supra,* we reject defendant's argument that instruction of the jury with CALJIC No. 10.21 was error.

III. *Did the trial court err in permitting the jury to take notes without a proper admonition?*

■ Defendant next contends the trial court erred in instructing the jury on notetaking. Pursuant to CALJIC No. 17.48 (1985 rev.), the jury was

instructed: "You have been given notebooks and pencils and you will be able to take them into the jury room when you deliberate. Notes are only an aid to memory and should not take precedence over independent recollection. A juror who did not take notes should rely on his independent recollection of the evidence and not be influenced by the fact that other jurors do take notes. Notes are for the notetaker's own personal use in refreshing his recollection of the evidence.

"Finally, should any discrepancy exist between a juror's recollection of the evidence and his notes, he may request the reporter read back the relevant proceedings and the trial transcript must prevail over the notes."

The use note to CALJIC No. 17.48 indicates it was based upon the decision of the California Supreme Court in *People* v. *Whitt* (1984) 36 Cal.3d 724, 746-748 [205 Cal.Rptr. 810, 685 P.2d 1161], and "is phrased so that it may be given either at the outset or at the conclusion of a trial, or both." (Use note, CALJIC No. 17.48 (1987 Supp.) p. 99.) *Whitt* specifically approved the admonitions on a juror's use of notes reflected in the instruction as above, and further approved an additional admonition, reflected in the second paragraph of CALJIC No. 17.48, which provides: "[A word of caution: You may take notes; however, you should not permit note-taking to distract you from the ongoing proceedings. Remember you are the judges of the credibility of witnesses.]" (Brackets in original.)

Clearly this paragraph is appropriate only if CALJIC No. 17.48 is given at the outset of a trial, and it is apparent from the record the instruction was not given here until the conclusion of the trial. Therefore, deletion of the second paragraph from the instruction at the end of trial was not error; defendant really objects to the failure of the trial court to give, sua sponte, CALJIC No. 17.48 in its entirety at the outset of trial. *People* v. *Whitt, supra,* imposed no sua sponte duty on the trial court to give this instruction at all but noted it is the better practice to do so.

However, even accepting this as the better practice, a presumption like that relied upon by defendant, i.e., that he was prejudiced by the trial court's failure to give CALJIC No. 17.48 at the beginning of trial, was rejected by the California Supreme Court in *People* v. *Ghent* (1987) 43 Cal.3d 739 [239 Cal.Rptr. 82, 739 P.2d 1250]. Defendant would have this court speculate that the jurors were in fact distracted from observing the demeanor of the witnesses by their preoccupation with notetaking and thus failed to fully employ the factors requisite to a credibility determination. However, as the court pointed out in *People* v. *Ghent, supra,* "in addition to the instruction which was given, defense counsel also cautioned the jurors not to place undue reliance upon their notes, and asked them to request a

reading of the transcript in case of any doubt or discrepancy. [These instructions were given by the trial court in this case.] There is no indication in the record that the jurors' notetaking distracted or improperly influenced them in any way. We cannot presume prejudice in the face of such a silent record." (*Id.* at p. 758.)

This court has nothing more than a silent record and, like the Supreme Court, should not presume defendant was prejudiced in the absence of any showing the jurors were distracted or improperly influenced by their notetaking. Defendant's claim to the contrary is rejected.

### IV. *Presentence Credit.*

Defendant contends the trial court erred in its calculation of presentence credit due him and that he is entitled to two additional days. The People have conceded this issue, and it requires no further discussion.

The judgment is affirmed; the trial court is directed to correct the abstract of judgment to reflect 189 instead of 187 days of presentence credit to which defendant is entitled and to forward the amended abstract of judgment to the appropriate authorities.

Stone (W. A.), J., and Brown (G. A.), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied June 23, 1988.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.