Filed 3/8/16  P. v. Chun CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM CHUN,<br><br>    Defendant and Appellant. | D067858<br><br><br><br>(Super. Ct. No. SCD258555) |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Rubin, Judge.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted William Chun of possession of methamphetamine (Health & Saf. Code, § 11377, count 1),[1] and possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1), count 2.) The trial court gave Chun credit for time served on count 1 and sentenced him to a term of four years in state prison on count 2. Chun appeals, contending (1) there was insufficient evidence to support the convictions under both counts, and (2) the trial court committed prejudicial error in giving a jury instruction on flight. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. Prosecution's Case

Early on the morning of September 11, 2014, law enforcement officers executed a search warrant on the residence of Kristian Childs, a friend of Chun's, who had been arrested the day before on drug-related offenses. Chun, a convicted felon, did not live at the house, but frequently stayed there.

When officers arrived, they knocked on the front door and announced their presence. No one answered, but a person inside ran across the room toward the side of the house. As officers entered the front door, there was a commotion at the side of the house and Chun and another person, Karen O'Leary, rushed out of a side door. One officer yelled for them to stop, but they continued walking until two officers detained and handcuffed them.

---

[1] Possession of methamphetamine was a lesser included offense in the count 1 charge of possession of a firearm by a person who possessed a controlled substance (Health & Saf. Code, § 11370.1, subd. (a).)

After detaining all present occupants, the officers searched the house. In the kitchen, officers discovered a backpack containing a .22 caliber gun, three bottles of prescription medication in Chun's name, ammunition, a torch lighter commonly used for smoking methamphetamine, and other miscellaneous items. In the living room, officers found a usable amount of methamphetamine inside a pack of Camel cigarettes, which was sitting on top of Chun's wallet. After the search, an officer interviewed Chun and he admitted to smoking cigarettes, but only when other people provided them.

B. Defense Case

At trial, the defense contended that Chun did not own the backpack, firearm or methamphetamine, noting that the items were found in places easily accessible to all occupants of the house.

Childs testified that the backpack containing the firearm belonged to Adrian Roberts, another resident of the house, because he had seen the backpack in Roberts's truck multiple times. Childs also testified that Chun's prescription medications are normally stored on the kitchen counter where O'Leary, Roberts's girlfriend, was cleaning the day before the search, making it easy for her to move the bottles into the backpack. Furthermore, the backpack also contained female costume jewelry, suggesting the backpack and firearm belonged to a female.

DISCUSSION

I. *Sufficiency of Evidence*

Chun contends there was insufficient evidence to support his convictions for possession of methamphetamine and felon in possession of a firearm. We disagree. Substantial evidence supported the convictions on both counts.

3

A.    Legal standards for establishing sufficiency of the evidence for possession

When considering a challenge to the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether the record contains substantial evidence from which any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; *People v. Johnson* (1980) 26 Cal.3d 557, 576.) We do not reweigh evidence or reassess a witness's credibility, and we presume the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) Even if the circumstances might also be reasonably reconciled with a contrary finding, we do not reverse as long as the evidence reasonably justifies the jury's findings. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) This standard applies whether direct or circumstantial evidence is involved. (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.)

To prove a defendant guilty of possession of methamphetamine, the prosecution must show: "(1) defendant exercised control over or the right to control an amount of methamphetamine; (2) defendant knew of its presence; (3) defendant knew of its nature as a controlled substance; and (4) the substance was in an amount usable for consumption." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 956, italics omitted.) Exclusive possession is not necessary and each of the elements may be proven by circumstantial evidence. (*People v. Busch* (2010) 187 Cal.App.4th 150, 161; *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242.)

4

The crime of felon in possession of a firearm requires "conviction of a felony and ownership or knowing possession, custody, or control of a firearm." (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052.) "Possession may be either actual or constructive as long as it is intentional." (*People v. Spirilin* (2000) 81 Cal.App.4th 119, 130.) Exclusive possession is not required and such possession may be proven through circumstantial evidence. (*People v. Williams* (2009) 170 Cal.App.4th 587, 625; *People v. Nieto* (1966) 247 Cal.App.2d 364, 368.)

B.      Sufficient evidence supported both possession convictions

Chun argues there was insufficient evidence to show he possessed either the methamphetamine or the firearm. Chun primarily relies on Childs's testimony that the backpack belonged to Roberts. He asserts that O'Leary, while cleaning the kitchen the day before the search, likely moved the three prescription bottles from their usual place on the kitchen counter into the backpack. Chun further argues the female costume jewelry inside the backpack shows someone else owned the backpack. He also contends that the methamphetamine and firearm were located in common areas of the house readily accessible to all occupants.

Chun's arguments, however, merely present an alternate interpretation of the facts and ignore evidence supporting the convictions. Essentially, Chun asks us to reweigh the evidence. This we cannot do. (*People v. Lindberg*, *supra*, 45 Cal.4th 1, 27.) Simply put, Chun's contentions do not overcome the substantial evidence of guilt that was presented at trial.

On this record, the jury, as finder of fact, reasonably rejected Chun's evidence. At trial, the prosecution questioned Childs's credibility as a witness by showing he had previously untruthfully asserted that drugs that were actually his belonged to Roberts. The jury could properly disregard Childs's testimony regarding the backpack and instead rely on officer testimony. (See *People v. Blassingill* (1988) 199 Cal.App.3d 1413, 1419.) Further, the jury could have viewed the female costume jewelry as irrelevant because the backpack contained random "junk" that Chun could have easily obtained cleaning out houses, a job he occasionally performed for Childs's mother. Finally, it is inconsequential that the drugs and firearm were found in common areas of the house because exclusive control is not required to determine Chun possessed both items.

Beyond that, there was substantial evidence affirmatively connecting Chun to the methamphetamine and the firearm. Because the methamphetamine was in a pack of cigarettes that was sitting on top of Chun's wallet, and because he admitted to smoking cigarettes, the jury reasonably found that the drugs belonged to Chun. Likewise, because the backpack contained three bottles of prescription medication in Chun's name, the jury reasonably inferred that the firearm in the backpack was also his. In addition, both the methamphetamine and firearm were found in a house where Chun frequently slept, kept his daily medication, and was present on the day of the search. Although Chun denied he was a permanent resident, he was not a mere visitor. (See *People v. Glaser* (1995) 11 Cal.4th 354, 368; *People v. Hannah* (1996) 51 Cal.App.4th 1335, 1347 [recognizing more protection for "mere visitors" during a search].) Lastly, Chun attempted to leave the house when officers arrived for the search, suggesting a consciousness of guilt. The evidence was sufficient to justify the jury's convictions.

6

## II. *Flight Instruction*

Chun next contends that the trial court committed prejudicial error in providing the standard jury instruction on flight, CALCRIM No. 372. We disagree. The flight instruction was not given in error; and even if it was error, it was not prejudicial.

A.    Legal standard for flight instruction

CALCRIM No. 372, given to the jury in this case, states "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." The trial court has a statutory obligation to instruct the jury on flight whenever the prosecution relies on evidence of flight as tending to show guilt. (Pen. Code, § 1127c; *People v. Mendoza* (2000) 24 Cal.4th 130, 179.)

"[F]light requires neither the physical act of running nor the reaching of a far-away haven." (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055, internal quotation marks omitted.) It does require a purpose to "avoid being observed or arrested." (*Ibid.*) "To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.) On appeal, a reviewing court determines whether there was sufficient evidence from which a jury could have reasonably inferred that the defendant fled. (*People v. Lutz* (1980) 109 Cal.App.3d 489, 498.)

7

Further, we apply the harmless error standard in reviewing an instructional error for prejudice. (*People v. Watson* (1956) 46 Cal.2d 818, 835-836; *People v. Silva* (1988) 45 Cal.3d 604, 628.) That is, an appellant must show a reasonable probability a result more favorable to him would have been reached absent the instruction. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)

B.      There was no error in giving the flight instruction

Chun argues there was insufficient evidence of flight on the day of the search because he and O'Leary were walking, not running, out of the house's side door and they immediately stopped when told to stop.[2] Regardless of these facts, which were contested, there was other evidence from which the jury could reasonably infer that Chun fled.

The officers announced their presence by knocking on the front door and rather than answer the door, someone inside ran across the room. As officers entered through the front door, there was a commotion at the side of the house and then Chun and O'Leary exited through a side door. An officer yelled for them to stop, subsequently detaining and handcuffing them. Even assuming the two were walking and immediately stopped after the officer's command, the jury could reasonably infer from the evidence that Chun was leaving the house through the side door to avoid police detection. The trial court did not err in giving the flight instruction.

---

[2]     On cross examination, the testifying officer was unsure whether Chun and O'Leary immediately stopped or continued walking after he commanded them to stop.

C.    Even assuming the instruction was error, it was not prejudicial

Chun argues the instruction was prejudicial because, given the closeness of the case, "the flight instruction could very easily have tipped the balance where the evidence was otherwise equal."  We disagree.

CALCRIM No. 372 does not assume the flight of the defendant, or that any such flight, if established, indicates guilt.  The very terms of the instruction require the jury first to decide whether it believed the defendant actually fled.  Only if the jury makes that preliminary finding does it proceed to decide the significance of that conduct.  Further, the instruction benefits a defendant by cautioning the jury that flight, alone, cannot prove guilt.  (See *People v. Boyette* (2002) 29 Cal.4th 381, 438 ["The cautionary nature of the instruction[ ] benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory."].)  Given the permissive and cautionary nature of the instruction and the significant evidence of Chun's guilt, Chun has not demonstrated a reasonable probability that he would have obtained a more favorable verdict absent that instruction.

DISPOSITION

The judgment is affirmed.

PRAGER, J.*

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.