Filed 3/13/14  P. v. Easter CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063210 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD242058) |
| CHARLES DEWAYNE EASTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Jan B. Norman, by appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Charles Dewayne Easter of three felony offenses he committed against Felix Figueroa: (1) robbery (count 1: Pen. Code,[1] § 211); (2) battery with serious bodily injury (count 2: § 243, subd. (d)); and (3) assault by means likely to produce great bodily injury (count 3: § 245, subd. (a)(4)). The jury also found true numerous sentence enhancement allegations, which are not at issue in this appeal. Easter thereafter admitted multiple probation denial priors (§ 1203, subd. (e)(4)) and a prior prison commitment (§§ 667.5, subd. (b), 668), which also are not at issue in this appeal. The court sentenced Easter to a total prison term of 10 years, and imposed a restitution fine under section 1202.4, subdivision (b) (hereafter § 1202.4(b)), in the amount of $6,000.

Easter appeals, contending his convictions should be reversed, and the matter should be remanded for a new trial because the court abused its discretion and violated his federal constitutional right to trial by impartial jurors when it failed to conduct a sufficient inquiry into potential juror misconduct after it learned juror No. 3 had conversed with juror No. 4 about certain evidence. Easter also contends the court abused its discretion by imposing victim restitution in the amount of $6,000 under section 1202.4(b), and, thus, the order should be vacated and the case should be remanded for a rehearing on the amount of that restitution. We affirm the judgment.

---

[1] Undesignated statutory references will be to the Penal Code.

FACTUAL BACKGROUND

A. *People's Case*

On July 9, 2012, in broad daylight, Easter and another Black male attacked and robbed Figueroa, who was disabled and unemployed and had been running errands in downtown San Diego. Figueroa testified that as he was walking southbound down Park Boulevard near its intersection with E Street the attackers blocked his path and demanded money. Figueroa, who suffered from severe anxiety, was terrified and tried to walk away. Easter's partner pulled out a long knife and stared at Figueroa. Figueroa was forced to the ground and, as Easter held an ice pick inches away from Figueroa's face, the other attacker "smashed" Figueroa's nose. Both attackers struck Figueroa in the face while demanding money. The attackers split open Figueroa's lip and broke bones in his nose and neck.

Figueroa testified that Easter took his wallet from his pocket during the attack. The wallet contained about $100. Easter emptied the wallet, took the cash, and threw the wallet on the ground. One of the men took Figueroa's passport and then threw it on the ground. Easter and the other attacker then ran away.

Figueroa immediately called 911 to report the attack. When the police arrived, he described Easter as a Black male who was wearing a black Michael Vick Atlanta Falcons football jersey. (1 RT 119, 122.) Shortly thereafter, the police located Easter near the crime scene. Easter was wearing the Falcons jersey that Figueroa had described, and there was blood on Easter's jeans that was later determined to contain DNA from Figueroa.

3

B. *The Defense*

Easter testified on his own behalf. He stated he had been convicted of domestic violence and was "homeless, on the streets" in downtown San Diego on July 9, 2012. He was sitting on the sidewalk smoking crack cocaine when Figueroa walked up looking to buy PCP. Easter indicated that, when a homeless woman offered to sell the drug to Figueroa, Figueroa sat down on the sidewalk between the woman and Easter. According to Easter, another man then approached and kicked Figueroa in the face. When Figueroa tried to get up, the man hit him, and Easter "got out of there."

On cross-examination, Easter admitted that when a police officer stopped him and asked whether he had been in the area of Park Boulevard and E Street, he lied to the officer when he denied he had been there. He told the prosecutor he did not know the man who attacked Figueroa, and he could not tell the prosecutor how tall he was, how much he weighed, what kind of hairstyle he had, whether he had facial hair, or what he was wearing. Easter believed Figueroa's blood got onto his pants because he was sitting next to Figueroa when he was attacked.

DISCUSSION

I. *JUROR MISCONDUCT*

Easter first contends his convictions should be reversed, and the matter should be remanded for a new trial because the court abused its discretion and violated his federal constitutional right to trial by impartial jurors when it failed to conduct a sufficient inquiry into potential juror misconduct after it learned juror No. 3 had conversed with juror No. 4 about certain evidence. This contention is unavailing.

4

A. *Background*

The first trial witness (Figueroa) testified on Friday, October 5, 2012. During a recess in the afternoon session on October 9, juror No. 3 tried to discuss the case with juror No. 4 in the presence of other jurors.

Two prosecution witnesses who worked for the San Diego Police Department—Detective James Barrera and criminalist Deborah Blackwell—overheard juror No. 3's remarks, and one of those witnesses, Detective Barrera, reported the incident to the prosecutor early the next morning.

The prosecutor immediately informed the court that, according to information provided by Detective Barrera and Blackwell, juror No. 3 commented to another juror, in the presence of other jurors, about the speed of the trial and wondered whether there would be evidence regarding the ice pick or the stolen money. The prosecutor also informed the court that Detective Barrera told her the male juror with whom juror No. 3 spoke (juror No. 4) was reading a book, and Detective Barrera did not remember hearing the male juror respond to juror No. 3. The prosecutor suggested that the court ask the witnesses and/or the jurors about what happened.

The court asked to hear from defense counsel, who stated he "wasn't present" during the incident, and then raised an unrelated evidentiary matter.

The court thereafter indicated it would discuss the matter with juror No. 3 to determine whether she had violated the court's order not to discuss the case, but stated it was not inclined to "start interviewing a bunch of jurors." Defense counsel did not object to the court's proposed course of action.

5

The court then questioned juror No. 3. The court informed her that an accusation had been made that she had a conversation with another juror about evidence in the case. Juror No. 3 responded that she asked the juror who sits next to her whether he had heard anything about the defendant having money on him because she thought she might have missed that testimony.

The court informed juror No. 3 that her discussion with juror No. 4 was a violation of the court's order not to discuss the case prior to deliberation. The court then asked juror No. 3 whether juror No. 4 had responded to her inquiry. Juror No. 3 answered that juror No. 4 had said he did not recall hearing any such testimony. The court then asked juror No. 3 whether she had any other conversation with any other jurors, and juror No. 3 replied she had not. The court also asked juror No. 3 whether, to her knowledge, any other jurors overheard her conversation with juror No. 4, and juror No. 3 answered they did not.

Outside the presence of juror No. 3, the court indicated to the attorneys that juror No. 3 had violated the court's order and, although her conduct did not necessitate a mistrial, the court believed it should remove her and replace her with an alternate. The court asked both the prosecutor and defense counsel for their thoughts, but both submitted without comment.

Thereafter, the court dismissed juror No. 3. When the jury reconvened, the court informed the jurors it had excused juror No. 3, and again admonished them not to discuss the case outside of the deliberation room. The court told the jury this was "a strict court order. There's no flexibility. There's no exceptions to it."

6

B. *Applicable Legal Principles*

A defendant has a constitutional right to a trial by an impartial jury. (*In re Hamilton* (1999) 20 Cal.4th 273, 293.) "An impartial jury is one in which no member has been improperly influenced [citations] and every member "'is capable and willing to decide the case solely on the evidence before it.'"'" (*Id.* at p. 294.)

"Prejudicial jury misconduct constitutes grounds for a new trial." (*People v. Blackwell* (1987) 191 Cal.App.3d 925, 929, citing § 1181, subd. 3.) In general, jurors commit misconduct when they directly violate the oaths, duties, and admonitions imposed on them. (*In re Hamilton*, *supra*, 20 Cal.4th at p. 294.)

Misconduct by a juror "usually raises a rebuttable 'presumption' of prejudice." (*In re Hamilton*, *supra*, 20 Cal.4th at p. 295.) "Any presumption of prejudice is rebutted, and the verdict will not be disturbed, if the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no substantial likelihood that one or more jurors were actually biased against the defendant." (*Id.* at p. 296, italics omitted.)

The California Supreme Court has explained that this objective standard for determining whether a verdict must be overturned for jury misconduct "is a pragmatic one, mindful of the 'day-to-day realities of courtroom life' [citation] and of society's strong competing interest in the stability of criminal verdicts [citations]." (*In re Hamilton*, *supra*, 20 Cal.4th at p. 295.) Our high state court further explained that "the jury is a 'fundamentally human' institution; the unavoidable fact that jurors bring diverse backgrounds, philosophies, and personalities into the jury room is both the strength and

7

the weakness of the institution. [Citation.] '[T]he criminal justice system must not be rendered impotent in quest of an ever-elusive perfection. . . . [Jurors] are imbued with human frailties as well as virtues. If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias.'" (*Id*. at p. 296.)

"'Actual bias' in this context is defined as 'the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party.'" (*People v. Nesler* (1997) 16 Cal.4th 561, 581, quoting Code Civ. Proc., § 225, subd. (b)(1)(C).)

"Whether prejudice arose from juror misconduct . . . is a mixed question of law and fact subject to an appellate court's independent determination." (*People v. Nesler, supra*, 16 Cal.4th at p. 582.)

"When a trial court is aware of possible juror misconduct, it must make whatever inquiry is reasonably necessary, but 'only when the defense comes forward with evidence that demonstrates "a strong possibility" of prejudicial misconduct.'" (*People v. Carter* (2003) 30 Cal.4th 1166, 1216.) The decision whether to investigate the possibility of juror misconduct rests within the sound discretion of the trial court. (*People v. Osband* (1996) 13 Cal.4th 622, 675.) "'[A] hearing is required only where the court possesses information which, if proven to be true, would constitute "good cause" to doubt a juror's ability to perform his duties and would justify his removal from the case.'" (*Id*. at pp. 675-676.)

C. *Analysis*

As noted, Easter claims the court abused its discretion and violated his federal constitutional right to trial by impartial jurors when it failed to conduct a sufficient inquiry into potential juror misconduct after it learned juror No. 3 had conversed with juror No. 4 about certain evidence. In support of these claims, Easter asserts the court should have questioned juror No. 4, Detective Barrera, and Blackwell, and, by failing to do so, the court "failed to conduct a sufficient inquiry as to whether Juror No. 4 should also have been excused."

We conclude Easter has forfeited his claims by failing to make a timely request that the trial court conduct a broader or more extensive inquiry, or in any other way to object to the court's course of action. In *People v. Holloway* (2004) 33 Cal.4th 96 (*Holloway*), which involved the murder of two female roommates, a juror (referred to as juror No. 3) repeatedly asked the court whether the jury could see photographs of the two victims while they were alive. (*Id*. at p. 123.) After juror No. 3 appeared before the court and counsel, outside the presence of the other jurors, an alternate juror revealed that juror No. 3 had mentioned his request to her. (*Ibid.*) The court again questioned juror No. 3, who said he understood he was not supposed to talk about the case with other jurors and apologized. (*Id*. at p. 124.) When the court asked juror No. 3 whether he had discussed his request with many of the jurors, juror No. 3 replied that three or four of the jurors asked him what he had asked for, and he "just mentioned that [he] had asked to see pictures of the girls." (*Ibid.*) After juror No. 3 left the courtroom, defense counsel made no comment on the just-completed interview. (*Ibid.*) When the entire jury reentered the

9

courtroom, the court, without any objection, admonished all of them that the court occasionally needed to talk to an individual juror alone, and the other jurors should not ask the juror about the interview because "[t]hat would be talking about this case." (*Ibid.*)

On appeal, the *Holloway* defendant claimed the trial court abused its discretion and deprived him of his Sixth Amendment right to an impartial jury in failing (among other things) to conduct an inadequate inquiry. (*Holloway*, *supra*, 33 Cal.4th at p. 124.) The California Supreme Court held the defendant forfeited his claims "by his failure to seek a more extensive or broader inquiry . . . at the time, or in any other way to object to the trial court's course of action." (*Id*. at p. 126.) Noting that the trial court had invited questions from counsel but counsel had declined, the *Holloway* court further explained that, "[h]aving failed to suggest any additional examination was required, thereby preventing the trial court from considering any arguments for conducting further examination, defendant 'is not privileged to make the argument now for the first time on appeal.'" (*Id*. at pp. 126-127, quoting *People v. McIntyre* (1981) 115 Cal.App.3d 899, 906.) The Supreme Court elected to reach the merits of the defendant's claims, observed that the trial court "was able to observe the juror's tone and demeanor" and concluded that the trial court had conducted an adequate inquiry. (*Holloway*, at p. 127.)

Similarly here, having failed to suggest any additional inquiry was required after the court questioned and discharged juror No. 3, Easter prevented the court from considering any arguments for conducting a more extensive inquiry that might have included the questioning of juror No. 4, Detective Barrera, and or Blackwell, and, thus, Easter "'is not privileged to make the argument now for the first time on appeal.'"

(*Holloway*, *supra*, 33 Cal.4th at pp. 126-127.) When the court told the attorneys that it would discuss the "potential juror misconduct issue" with juror No. 3 and that it did not want to "start interviewing a bunch of jurors," defense counsel did not object to the court's proposed course of action. Although Blackwell was present during the court's questioning of juror No. 3, defense counsel did not suggest that Blackwell be questioned about what she had witnessed.

After the court questioned juror No. 3, the court indicated to the attorneys that juror No. 3 had violated the court's order and, although her conduct did not necessitate a mistrial, she should be discharged and replaced with an alternate juror. The court then asked both the prosecutor and defense counsel for their thoughts, but both submitted without comment. The record shows that, after the court discharged juror No. 3 and again admonished the jury not to discuss the case outside the deliberation room, the defense was satisfied with the outcome and did not request a more extensive inquiry that would include the examination of juror No. 4, Detective Barrera, and/or Blackwell.

For the foregoing reasons, we conclude Easter has forfeited his claims of error. (*Holloway*, *supra*, 33 Cal.4th at p. 126.) In light of our conclusion, we need not reach the merits of his claims. Were it necessary to do so, we would reject them because the record shows the court conducted a sufficient inquiry. During the court's questioning, juror No. 3 acknowledged she had asked juror No. 4 whether he had heard any testimony about the defendant having money on him because she thought she might have missed that testimony. Juror No. 3 informed the court that juror No. 4 had replied that he did not recall hearing any such testimony and that she did not have any other conversation with

11

any of the other jurors about the case. The court, which was able to observe juror No. 3's

tone and demeanor, did not abuse its discretion by limiting its inquiry to the questioning

of juror No. 3. Juror No. 4's extremely brief response to juror No. 3's question did not

"'constitute "good cause" to doubt [juror No. 4's] ability to perform his duties

and . . . justify his removal from the case.'" (*People v. Osband, supra*, 13 Cal.4th at pp.

675-676.)

## II. *RESTITUTION FINE*

Easter also contends the court abused its discretion by imposing a restitution fine

in the amount of $6,000 under section 1202.4(b), and, thus, the court's order should be

vacated and the case should be remanded for a rehearing on the amount of that fine. This

contention is unavailing.

A. *Applicable Legal Principles*

Section 1202.4(b) provides:

> "(b) In every case where a person is convicted of a crime, the court
> shall impose a separate and additional restitution fine, unless it finds
> compelling and extraordinary reasons for not doing so and states
> those reasons on the record.
>
> "(1) The restitution fine shall be set at the discretion of the court and
> commensurate with the seriousness of the offense. If the person is
> convicted of a felony, *the fine shall not be less than* [*$240*] . . . *and
> not more than* [*$10,000*] . . . .
>
> "(2) In setting a felony restitution fine, the court *may* determine the
> amount of the fine as the product of the minimum fine pursuant to
> paragraph (1) multiplied by the number of years of imprisonment the
> defendant is ordered to serve, multiplied by the number of felony
> counts of which the defendant is convicted." (Italics added.)

Section 1202.4, subdivision (c), which addresses a defendant's inability to pay, provides in part:

> "The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record.  A defendant's *inability to pay* shall not be considered a compelling and extraordinary reason not to impose a restitution fine.  *Inability to pay* may be considered only in increasing the amount of the restitution fine in excess of the minimum fine pursuant to paragraph (1) of subdivision (b)."  (Italics added.)

Section 1202.4, subdivision (d), which also addresses a defendant's inability to pay, provides:

> "In setting the amount of the fine pursuant to subdivision (b) in excess of the minimum fine pursuant to paragraph (1) of subdivision (b), the court shall consider any relevant factors, including, but not limited to, the defendant's *inability to pay, the seriousness and gravity of the offense and the circumstances of its commission*, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime.  Those losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime.  Consideration of a defendant's *inability to pay* may include his or her future earning capacity.  A defendant shall bear the burden of demonstrating his or her *inability to pay.  Express findings by the court as to the factors bearing on the amount of the fine shall not be required.*  A separate hearing for the fine shall not be required."  (Italics added.)

1. *Standard of review*

"A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.)  If there is a rational and factual basis for the amount of restitution ordered by the

13

trial court, the reviewing court will not find an abuse of discretion. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)

B. *Analysis*

In support of his claim that the court abused its discretion by imposing a section 1202.4(b) restitution fine in the amount of $6,000, Easter points out that a defendant's ability to pay is one of the factors to be considered in imposing such a fine. He contends that the record did not support the amount of the fine because "[n]othing in the probation report reviewed by the trial court provided a justification for a $6,000 restitution fine" under section 1202.4(b). Specifically, he asserts (1) "[t]he probation report indicates that [he] has no assets and supported himself by recycling and panhandling," and (2) he "qualified for indigent representation."

The People argue, and we agree, that Easter has forfeited his challenge to the court's order imposing the $6,000 restitution fine because he did not object to it at or before his sentencing. The rules governing forfeiture are well established.

In *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1469 (*Gibson*), the Court of Appeal explained that "the need for orderly and efficient administration of the law—i.e., considerations of judicial economy—demand that [a] defendant's failure to object in the trial court to imposition of [a] restitution fine should preclude him from contesting the fine on appeal." *Gibson* further explained:

> "Defendants routinely challenge on appeal restitution fines to which they made no objection in the sentencing court. In virtually every case, the probation report put the defendant on notice that a restitution fine would be imposed. Requiring the defendant to object to the fine in the sentencing court if he or she believes it is invalid

14

places no undue burden on the defendant and ensures that the sentencing court will have an opportunity to correct any mistake that might exist, thereby obviating the need for an appeal. Conversely, allowing the defendant to belatedly challenge a restitution fine in the absence of an objection in the sentencing court results in the undue consumption of scarce judicial resources and an unjustifiable expenditure of taxpayer monies." (*Ibid*.)

Accordingly, *Gibson* concluded that, "in the interests of fairness to the sentencing court, fairness to the opposing party, and the needs for an orderly and efficient administration of law and judicial economy, a defendant's failure to object in the trial court to the imposition of a restitution fine constitutes a waiver of the right to complain thereof on appeal." (*Gibson*, *supra*, 27 Cal.App.4th at p. 1469.)

The California Supreme Court has held the forfeiture rule applies to claims that a trial court erroneously imposed a restitution fine under section 1202.4 without adequately taking into account the defendant's ability to pay. (*People v. Nelson* (2011) 51 Cal.4th 198, 227 (*Nelson*); *People v. Gamache* (2010) 48 Cal.4th 347, 409.)

Here, the record on appeal shows Easter did not object to the court's imposition of the $6,000 restitution fine at his sentencing. Accordingly, we conclude he has forfeited the right to challenge on appeal the court's imposition of that fine. (*Nelson*, *supra*, 51 Cal.4th at p. 227; *People v. Gamache*, *supra*, 48 Cal.4th at p. 409; *Gibson*, *supra*, 27 Cal.App.4th at p. 1469.)

Easter attempts to avoid forfeiture of his claim by contending his trial counsel's failure to object to the restitution fine constituted ineffective assistance of counsel. This contention is unavailing.

15

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) To show prejudice, the defendant must show a reasonable probability he would have received a more favorable result had his counsel's performance not been deficient. (*Strickland*, at pp. 693-694; *Ledesma*, at pp. 217-218.)

Here, Easter has failed to meet his threshold burden of showing his counsel's performance in failing to object to the $6,000 restitution fine was deficient because he has not shown, and cannot demonstrate, that the imposition of that fine was arbitrary or capricious such that an objection was warranted under prevailing professional norms. We presume the court considered the various relevant factors set forth in section 1202.4, subdivision (d) (discussed, *ante*), including Easter's ability to pay the fine. That subdivision provides that "[e]xpress findings by the court as to the factors bearing on the amount of the fine shall not be required." Thus, "as the trial court was not obligated to make express findings concerning his ability to pay, the absence of any findings does not demonstrate it failed to consider this factor." (*People v. Gamache, supra*, 48 Cal.4th at p. 409.)

The probation report in this matter—which the court read and considered—informed the court that, although Easter had a history of employment, he had been unemployed for two years. At the sentencing hearing, the court specifically noted

16

Easter's unemployment as a factor listed in the probation report in support of the recommendation that he be denied probation.

The amount of the fine was a discretionary matter for the court to decide, and the amount set by the court—$6,000—was less than the $6,600 recommended in the probation report, and was well below the statutory maximum of $10,000. (See § 1202.4(b)(1), discussed, *ante*.) Nothing in the record establishes that the court used the discretionary formula set forth in section 1202.4, subdivision (b)(2) (discussed, *ante*) or that, assuming it did, improperly applied that formula, as Easter suggests.

One of the statutory factors to be considered by the court was "the seriousness and gravity of the offense and the circumstances of its commission." (§ 1202.4, subd. (d).) The court specifically found that Easter "inflicted physical and emotional injury to the victim." The court also stated it believed Easter "terrorized" the victim. From the evidence presented at trial, the court was aware that Figueroa suffered lacerations and broken bones in his nose and neck as a result of Easter's attack. The multiple fractures in Figueroa's nose required surgical repair.

For the foregoing reasons we conclude that, even if he had not forfeited his claim, Easter has failed to meet his burden of showing the amount of the restitution fine was arbitrary or capricious, and he has also failed to meet his burden of establishing his trial counsel's failure to object constituted ineffective assistance.

17

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

18