Filed 12/23/14  P. v. Manns CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072576 |
| Plaintiff and Respondent, | (Super. Ct. No. 04F05796) |
| v. | |
| DAWAN DONTE ROWE-MANNS, | |
| Defendant and Appellant. | |

A jury found defendant Dawan Donte Rowe-Manns guilty of battery with serious bodily injury (Pen. Code,[1] § 243, subd. (d)) on Brandi Marshall (Brandi) and battery (§ 242) on her boyfriend, Zackary Doyle (Zack).  In a court trial, the court found defendant had a prior strike conviction and sentenced him to 13 years in state prison.

---

[1] References to undesignated sections are to the Penal Code.

Defendant contends reversal of his conviction is required because of: (1) juror misconduct; (2) error in instructing the jury on causation; and (3) the cumulative prejudicial effect of the foregoing errors. We conclude defendant's failure to pursue his claim of juror misconduct in the trial court forfeits that issue for appeal. We also conclude that there was neither instructional error as asserted by defendant nor was there prejudice due to cumulative error.

FACTUAL AND PROCEDURAL BACKGROUND

During the afternoon of March 5, 2004, Brandi, her ten-year-old sister Megan, Zack, and Steven Caldwell arrived on bicycles outside the gate to the apartment complex where Brandi lived. Defendant and his wife also lived in the complex and were sitting in a car parked outside the gate. Brandi and Zack were acquainted with defendant and his wife. Brandi's friend Tara was parked nearby in her car.

Brandi testified that as she walked over to speak with Tara, defendant approached her and Zack, yelling at Zack that he had been in defendant's apartment. Brandi screamed for help, opened the gate to the complex, and then ran back to aid Zack. Defendant struck Brandi on the right side of her face, beneath her right eye, causing Brandi to fall and hit her head on the cement, rendering her unconscious. As Brandi regained consciousness, she saw that her neighbor, Katherine Tucker, was holding a young girl who was trying to break away from her. Brandi described the girl as a short, skinny teenager with pigtails. Brandi, Megan, and Zack got into Tara's car and Tara drove them to Zack's residence where they called 911.

Megan, 11 years old at the time of trial, testified that defendant struck Zack only once, but "another guy" also hit Zack. Defendant then struck Brandi once in the face below her eye, causing Brandi to fall and strike her head on the cement curb. While Brandi was on the ground a young girl was trying to hit Brandi and was pulling her hair.

Brandi was treated at a hospital for facial bone fractures and the loss of a tooth from her partial plate.

2

Katherine Tucker, who also lived in the complex, testified that upon returning to the complex she saw a small girl on top of Brandi, repeatedly hitting Brandi in the face. Tucker was able to pull the girl off Brandi.

Deputy Sheriff Christopher Bittle responded to the 911 call and drove to Zack's home where he interviewed Brandi. Brandi gave no names, but said she was attacked by a black male and black female who were in a car. The black male got out from the passenger side and began yelling at Zack and then hit Zack in the face. When Brandi tried to intervene, the black female got out of the car and was yelling at her. The black male then struck Brandi, causing her to black out, but she did not know for how long. Brandi also said that a second black male and a black female came out from the complex, and the black male started hitting Zack. Two black females also hit Brandi in the face.

Caldwell, who did not know defendant or his wife, testified that after defendant hit Zack, Brandi pushed defendant. The black female then got out of the driver's side of the car and she and Brandi pulled each other's hair. The black male struck Brandi and she fell to the ground crying and looking for her tooth.

DISCUSSION

I

*Juror Misconduct*

Defendant contends his convictions must be reversed because of juror misconduct. Not so.

Prior to the giving of opening statements, the court instructed the jurors that they were not to discuss the case with anyone, including people with whom they lived, those whom they encountered from time to time, and the other jurors and alternates. The jurors were instructed that the first time they were to talk about the case would be when they were deliberating and all 12 were present.

After the testimony was completed and both sides had rested, the prosecutor informed the court that while she was out sick the previous week, the prosecutor who was

3

standing in for her told her of a potential problem involving a juror or jurors discussing the case and she wanted to know if the issue had been addressed in her absence. The court responded, "I think it was discussed, but we never confronted the juror or jurors about it. And it seems a little late to be doing that now. [¶] I think in the realm of the interruption in the flow of the trial, because I overlooked it and then nobody else raised it again."

Because it was defense counsel who had first brought the potential juror misconduct to the court's attention, the court asked counsel to put on the record what she had been told. Counsel explained that on Thursday of the previous week, Katherine Tucker, a witness in the case, told counsel that while she, Tucker, was waiting in the hallway "the jurors were complaining about this being a colossal waste of time." Counsel further stated that after court concluded for the day and counsel was walking to her office, Tucker told her that a black male juror "had said something to the affect of where did he even hit her, anyway?" The person to whom the black male juror was speaking did not respond verbally. Counsel also explained that the reason she was informing the court of the out-of-court statements was that she was "duty bound" to do so.

The court then pointed out that after being informed by counsel of the above statements, it was the court's intention to question the juror about the incident and, depending on what the juror said, make a determination of what to do. The court stated it "expected [it] would simply admonish" the juror and remind the jury not to discuss the case." However, when court convened on Monday, and the prosecutor was still out sick, the matter "just slipped my mind and we just never got back to it." The matter was not raised again in the trial court.

Defendant argues that once the court was informed of potential juror misconduct, the court was bound to conduct a hearing to protect the integrity of the jury process. There was no error.

4

The California Supreme Court has pointed out that the "[F]ailure to raise the issue of juror misconduct *and* seek relief from the court on that basis results in a forfeiture of the issue on appeal." (*People v. Dykes* (2009) 46 Cal.4th 731, 808, fn. 22, italics added.) For example, in *People v. McIntyre* (1981) 115 Cal.App.3d 899, while the jury was deliberating, a local paper published an article about the trial. (*Id.* at p. 905.) Defendant moved for a mistrial, which the court denied because there was no evidence that any juror had read the article. (*Ibid.*) However, after denying the mistrial motion, the court queried the jurors on whether any of them had read the article. One juror stated he had read some of the article, but remembered very little about it. (*Ibid.*) The juror stated the article did not influence him and that he believed he could be fair. (*Ibid.*) The court asked defense counsel if he wanted to question the juror and counsel declined, saying he was satisfied and that he had "[n]othing further." (*Ibid.*)

On appeal, the defendant contended the trial court erred in not substituting the alternate juror after it was learned one juror " 'committed misconduct' " by reading the article. (*People v. McIntyre*, *supra*, 115 Cal.App.3d at p. 905.) The appellate court found defendant forfeited the argument because after the juror was examined, defendant made no motion for a mistrial nor did he request substitution of the alternate juror. (*Id.* at p. 906.)

Here, defense counsel brought the matter to the trial court's attention. But that is as far as she went. Counsel never asked for an evidentiary hearing, never sought substitution of an alternate juror, never moved for a mistrial on grounds of juror misconduct, and never brought the matter to the court's attention again. Clearly, counsel did not consider the matter of much importance. We conclude defendant's issue is forfeited.

Defendant also contends that his counsel's failure to move for an inquiry regarding the jury misconduct was ineffective assistance of counsel. No ineffective assistance of counsel has been established.

5

"In considering a claim of ineffective assistance of counsel, it is not necessary to determine ' "whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." ' " (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.) It is defendant who bears the burden of demonstrating a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.)

Defendant dedicates his entire argument to demonstrating that his counsel's failure to remind the court to investigate the claim of juror misconduct fell below what is expected of a reasonably competent attorney. On the contrary, we believe defense counsel could have had a reasonable tactical basis for not pursuing the issue further, given that what counsel heard tended to show juror skepticism toward the merits of the prosecution's case. In other words, defense counsel could have reasonably decided to "let sleeping dogs lie" because the views expressed by the juror favored defendant. In any event, to demonstrate ineffective assistance of counsel, defendant must also establish that, but for his attorney's deficiency, he would have obtained a more favorable result, i.e., defendant was prejudiced. Having failed to even attempt to make that showing, defendant's ineffective assistance argument is rejected.

## II

### *Instruction On Causation*

Defendant contends the trial court committed reversible error by failing to instruct the jury, sua sponte, on superseding cause. The purported superseding cause being "the attack by the small, teenage girl, and not the earlier punch by [defendant], was the cause of Brandi's serious injuries." We conclude the instructions given were correct statements

of the law of causation applicable to the evidence in this case, and there was absolutely no evidentiary basis for an instruction on superseding cause.

Defendant's contention arises as follows. After being instructed and retiring to deliberate, the jury requested additional instructions on causation. The court prepared a draft of the response it intended to give and showed it to counsel. Defendant requested the court include language that "the serious injury was a normal and . . . reasonably foreseeable result of Defendant's original act." The court declined to add such language because it believed the instructions it was providing were adequate and less confusing.

The court then instructed the jury: "The criminal law has its own particular way of defining cause. A cause of the serious bodily injury is an act that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act the serious injury and without which the serious injury would not occur. [¶] There may be more than one cause of the serious injury to Brandi [M.]. When the conduct of two or more persons contributes concurrently as a cause of the serious injury, the conduct of each is a cause of that serious injury if that conduct was also a substantial factor contributing to it. A cause is concurrent if it was operative at the moment of the serious injury and acted with another cause to produce the serious injury. [¶] If you find that the defendant's conduct was a cause of the serious injury to Brandi [M.], then it is no defense that the conduct of some other person contributed to that injury. [¶] However, if you have a reasonable doubt that the defendant's conduct was a cause of serious injury to Brandi [M.], as defined above, then you must find the defendant not guilty."

Defendant argues the foregoing instruction was deficient because it failed to take into account that while there was substantial evidence from which the jury could find that defendant's striking Brandi caused her serious bodily injury, there was also substantial evidence that "the conduct of the small, teenage girl violently hitting and kicking Brandi was a superseding cause which exonerated [defendant] of culpability."

7

Defendant's argument demonstrates a basic misunderstanding of the defense provided by an intervening superseding cause. " 'In law, the term "superseding cause" means "an independent event [that] intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original [wrongdoer] should have foreseen that the law deems it unfair to hold him responsible." ' " (*People v. Brady* (2005) 129 Cal.App.4th 1314, 1325.) In other words, suppose the defendant commits a crime (first crime) and the first crime sets the stage for a third party to commit a separate crime (second crime). If the People believe that the commission of the second crime was a reasonably foreseeable consequence of the first crime, the People will not only charge the third party with the commission of the second crime, but they will also charge the defendant with the second crime. If so charged, the defendant may assert, as a defense to the second crime, that the third party's commission of the second crime was NOT a reasonably foreseeable consequence of the defendant's commission of the first crime, but instead it was an intervening act which relieved defendant of responsibility for the second crime. Thus, defendant's liability for the second crime turns on the trier of fact's determination of whether the second crime was or was not reasonably foreseeable, but either way, that determination has nothing to do with defendant's liability for the first crime.

*People v. Cervantes* (2001) 26 Cal.4th 860, cited multiple times by defendant in his briefs, is a prime example of the applicability of the theory of an intervening superseding act. Cervantes, a Highland Street gang member (Highland Street) got into a dispute with Cisneros, an Alley Boys gang member (Alley Boys) at a large party. Linares (Alley Boys) attempted to defuse the situation and Cervantes shot him in the chest. A melee erupted and gang challenges were exchanged. A group of Alley Boys saw Cabrera (Highland Street) drive off in his car and fired a volley of shots, killing him. (*Id.* at p. 863.)

8

Cervantes was charged with, inter alia, the murder of Cabrera and attempted murder of Linares.  (*People v. Cervantes*, *supra*, 26 Cal.4th at pp. 864, fn. 3, 865.)  A gang expert testified that both gangs would be expected to be armed, the shooting of Linares would be considered a major disrespect to the Alley Boys, the Alley Boys would be expected to avenge the shooting quickly, and, therefore, the shooting of Cabrera was a reasonably foreseeable consequence of Cervantes's actions.  (*Id. at* pp. 863-864.)  Cervantes was convicted of both charges, the theory of the murder charge being that the fatal shooting of Cabrera was a reasonably foreseeable event following Cervantes's shooting of Linares.  (*Id.* at p. 864, fn. 3)

The California Supreme Court reversed Cervantes's murder conviction, observing: "In short, nobody forced the Alley Boys' murderous response in this case, if indeed it was a direct response to [Cervantes's] act of shooting Linares.  The willful and malicious murder of Cabrera at the hands of others was an independent intervening act on which [Cervantes's] liability for the murder could not be based." (*People v. Cervantes*, *supra*, 26 Cal.4th at p. 874.)

Of relevance to the present case, the Supreme Court reversed Cervantes's conviction of murder, but did not reverse Cervantes's conviction of attempted murder of Linares, which it most certainly would have done if defendant's theory of the applicability of an intervening superseding cause was correct.

Consequently, there was no evidentiary basis for giving an instruction on an intervening superseding cause.

Defendant also argues that his counsel's failure to obtain an instruction on an intervening superseding event, being the cause of Brandi's injuries, deprived the jury of the "adjudication of a potentially meritorious defense."  For reasons just explained, defendant was not entitled to any such instruction.  Accordingly, counsel's failure to request such an instruction could not be the basis supporting an ineffective assistance claim.

## III

### *Cumulative*

Defendant contends that the cumulative effect of the foregoing errors require reversal.  Not so.  No error having been shown, there could be no cumulative effect.

### DISPOSITION

The judgment is affirmed.


                                                       _____ROBIE_____, J.


We concur:


_____BLEASE_____, Acting P. J.


_____MAURO_____, J.

10