Filed 11/19/20  P. v. Quintero CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NOE CALDERON QUINTERO,<br><br>    Defendant and Appellant. | H045232<br>(Santa Clara County<br> Super. Ct. No. C1108673) |

A jury convicted defendant of multiple sex offenses involving two victims, and unauthorized use or theft of a vehicle.  As to the sex offenses, he argues the trial court erred by admitting expert testimony on Child Sexual Abuse Accommodation Syndrome and by not giving a unanimity instruction in connection with a forcible lewd conduct charge.  As to the theft offense, he challenges the conviction on statute of limitations grounds.  He also identifies errors in penalty assessments imposed.  Although we reject the challenges related to defendant's convictions, we will modify the judgment to correct the miscalculated penalty assessments, and affirm the judgment as modified.

## I.  BACKGROUND[1]

Defendant sexually abused his niece, M. on multiple occasions over a three- or four-year period, starting when she was around 10 years old after she moved to Modesto in 1999.  The abuse included sodomy and forced oral copulation.  M. disclosed the abuse to her grandmother when she was 18 years old.

---

[1] We refer to the victims by their first initial to protect their privacy.  (Cal. Rules of Court, rule 8.90(b)(4).)

Defendant began sexually abusing his cousin's six-year-old daughter, S. in 2005. The molestations stopped in 2010, when S.'s mother found defendant in S.'s bedroom in the middle of the night. Defendant was standing in front of S. who was sitting on her bed with her nightgown pushed up and legs spread. A felony complaint was filed in 2011, and an arrest warrant issued for defendant at that time. The complaint charged defendant with committing several sex offenses against S., and with unlawfully taking S.'s brother's car after S.'s mother halted the last assault. Defendant had left the home in the car (a Nissan Altima), abandoned it in a nearby city, borrowed his then-girlfriend's truck, and was arrested three years later in Los Angeles.

Defendant was ultimately charged in an amended information with three counts of oral copulation of a child under age 10 (counts 1, 2, 6; Pen. Code § 288.7, subd. (b)); four counts of lewd acts on a child under age 14 (counts 3, 4, 9, 12; Pen. Code, § 288, subd. (a)); one count of aggravated sexual assault on a child under age 14 (count 5; Pen. Code, § 269, subd. (a)); five counts of lewd acts by force on a child under age 14 (counts 7, 8, 11, 16, 23; Pen. Code, § 288, subd. (b)(1)); four counts of sodomy by force (counts 13, 14, 18, 20; Pen. Code, § 286, subd. (c)(2)); three counts of kidnapping to commit a sexual offense (counts 15, 19, 21; Pen. Code, § 209, subd. (b)(1)); three counts of oral copulation by force (counts 17, 22, 24; Pen. Code, former § 288a, subd. (c)(2)); and one count of theft or unauthorized use of a vehicle (count 10; Veh. Code, § 10851, subd. (a)). Counts 1 through 9 charged offenses committed against S., and counts 13 through 24 charged the earlier offenses involving M. The offenses in counts 11 and 12, alleged to have occurred in 2009 or early 2010, involved defendant's then-girlfriend's niece and nephew when they were under age five. Counts 3, 4, 7–9, 11–14, 16–18, 20, and 22–24 included multiple victim allegations. (Pen. Code, § 667.61, (b), (e).)

The four victims testified at trial. At that time, M. was 27 years old, S. was 17 years old, and the younger children, who were unable to identify defendant as having molested them, were 10 and 11 years old. The prosecution called several other witnesses,

2

including M.'s grandmother, S.'s mother, S.'s brother, the younger victims' mother, defendant's former girlfriend, and an expert in Child Sexual Abuse Accommodation Syndrome (CSAAS).

Defendant presented expert testimony regarding memory recall error, false reporting, and child suggestibility. He argued M. and S. had fabricated their allegations, and the younger children were recalling false memories. He also argued the touching described by the nephew did not prove sexual intent.

The jury convicted defendant on 20 of the 24 charges. Defendant was found not guilty of count 12 (lewd act on the nephew) and count 19 (kidnapping M. to commit a sexual offense). The jury was unable to reach verdicts on count 6 (sexual penetration with S. in a truck) and count 11 (lewd act on the niece). Defendant was sentenced to an aggregate term of 258 years to life.

## II. DISCUSSION

### A. EXPERT TESTIMONY REGARDING CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME

Expert testimony is admissible if it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) " '[E]ven if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would "assist" the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness." ' " (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300 (*McAlpin*).) The trial court has broad discretion to decide whether to admit expert testimony, and we review the trial court's decision for abuse of discretion. (*People v. McDowell* (2012) 54 Cal.4th 395, 426.) The ruling will not warrant reversal " 'unless the trial court exercised its discretion in an arbitrary,

3

capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Hovarter* (2008) 44 Cal.App.4th 983, 1004.)

CSAAS reflects a body of clinical research identifying a wide range of common behaviors displayed by children known to have been sexually abused. CSAAS is not a diagnostic tool, and it is not admissible to prove that a child was molested. (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744; accord, *People v. Bledsoe* (1984) 36 Cal.3d 236, 247, 251 [rape trauma syndrome evidence is not admissible to prove a rape occurred].) But our Supreme Court recognizes that expert testimony on CSAAS is admissible to rehabilitate a witness's credibility when the defendant suggests that a child's conduct after an alleged molestation is inconsistent with his or her claim of molestation. (*McAlpin*, *supra*, 53 Cal.3d at p. 1300.) The Supreme Court explained in *McAlpin*: " 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' " (*Id*. at pp. 1300–1301.)

The prosecution argued in limine that CSAAS evidence would assist the jury in assessing the testifying victims' credibility by dispelling misconceptions regarding failed or late reporting, inconsistent statements, continuing to live or visit with the perpetrator, and recanting original reports. The court ruled the testimony was admissible to explain myths and misconceptions, but not to diagnose whether someone is a victim. At trial, the expert described secrecy, helplessness, entrapment or accommodation, delayed and unconvincing disclosure, and retraction or recanting as five types of behavior commonly seen in child victims of sexual abuse. He stated that the purpose of identifying the five behaviors (also referred to as the five CSAAS components) is to educate people that children cope with trauma differently than adults and differently than what adults might expect of children. The witness explained that labeling the clinical research as a "syndrome" is a misnomer in that a syndrome suggests co-occurring symptoms and a diagnosis, which is not the case here. The witness clarified that the behaviors described

4

in CSAAS are seen in children known to have been sexually abused, but their presence or absence does not establish whether a child has or has not been sexually abused.

*Showing of Myth or Misconception*

Repeating the argument he advanced in the trial court, defendant argues the prosecution failed to establish the probative value of CSAAS testimony because no showing was made of the jury having myths or misconceptions regarding child sexual abuse victims which would require expert testimony to dispel. He cites no authority, and we are aware of none, requiring such a showing.

Defendant posits that the heightened publicity surrounding child molestation for many years has produced a more educated audience, obviating the need for expert testimony on CSAAS, which was first documented in 1983. Defendant proffered no evidence to the trial court that behaviors of sexually abused children are common knowledge to the ordinary person. (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300–1301.) And the record itself belies that contention. The expert testified that "parents and adults in general have some misconceptions or expectations of a child and the way they should act or the way they expect them to act after they've been abused or while they're telling about what's happened to them." He went on to explain that educating parents about their child's reaction to being sexually abused is a key component of a child's treatment and built into the services provided to the child.

Defendant argues that the court in *People v. Wells* (2004) 118 Cal.App.4th 179 (*Wells*) implicitly found that molestation victims do not exhibit unusual behaviors or characteristics; a jury is therefore capable of assessing an accuser's credibility without expert testimony about how a victim may behave. The defendant in *Wells* sought to rebut the argument that the victim's disclosure behavior was not inconsistent with having been sexually abused (an argument supported by CSAAS testimony). (*Id*. at pp. 181, 187.) Wells proffered testimony from a rape trauma expert who had reviewed the victim's videotaped interviews and intended to testify that the victim's demeanor (absence of

5

emotional reaction to being raped) was inconsistent with the usual emotional reactions exhibited by trauma victims. (*Id.* at p. 187.) That testimony was inadmissible because Wells made no showing that child abuse therapists routinely rely on a child's display of emotion in describing a trauma to determine whether the child was in fact traumatized. (*Id.* at p. 189.) Distinguishing CSAAS and rape trauma syndrome evidence, the *Wells* court observed that "proposed testimony about the 'usual' demeanor of trauma victims is not relevant to correct any common myth or misconception about the behavior of children who have been molested." (*Id.* at p. 189.) The court explained: "It is one thing to say that child abuse victims often exhibit a certain characteristic or that a particular behavior is not inconsistent with the child having been molested. It is quite another to conclude that where a child meets certain criteria, we can predict with a reasonable degree of certainty that he or she has been abused. The former may be appropriate in some circumstances; the latter—given the current state of scientific knowledge—clearly is not." (*Id.* at p. 188.)

Defendant's argument misses the salient points made in *Wells*. Victims of child sexual assault may not exhibit unusual behaviors. But that does not mean that a jury would not be aided by expert testimony dispelling misconceptions regarding the behavior of child abuse victims. CSAAS evidence was admitted in *Wells* to explain that perpetrators often manipulate or coerce children into keeping quiet; children generally do not immediately disclose abuse; disclosure is typically an extended process; and the child's story often varies with each retelling. (*Wells*, *supra*, 118 Cal.App.4th at p. 186.) The testimony here was admitted to address similar characteristics. Defendant fails to persuade us that the testimony "add[s] nothing at all to the jury's common fund of information." (*McAlpin*, *supra*, 53 Cal.3d at p. 1300.)

*Scope of CSAAS Testimony*

In *People v. Gilbert* (1992) 5 Cal.App.4th 1372, this court instructed that CSAAS testimony must be limited to observations concerning the behavior of abused children as

6

a class, and should avoid reciting the facts of the case being tried or similar facts. (*Id*. at pp. 1383–1384.) We also recognized the more stringent view expressed by the Fourth District in *People v. Bowker* (1988) 203 Cal.App.3d 385, that CSAAS testimony "must be targeted to a specific 'myth' or 'misconception' suggested by the evidence" to preclude an impermissible inference that child sexual abuse has occurred. (*Gilbert*, at p. 1384, quoting *Bowker*, at pp. 393–394.) Citing *Gilbert*, defendant argues that allowing the witness to testify expansively on all aspects of CSAAS violates the rule that the evidence be narrowly tailored to particular misconceptions.

Here, the prosecutor identified in limine nonreporting and delayed reporting; inconsistent statements; continued visits or contact with the perpetrator following molestation; and recanting original reports as behaviors the jury may unfairly interpret as untruthfulness on the part of the victims. Defendant did not object to the prosecutor's proffer, nor did he object to the expert's testimony during trial as beyond the scope of any misconceptions arising from the victims' testimony. The argument is thus forfeited for failing to raise it to the trial court. (*People v. Seijas* (2005) 36 Cal.4th 291, 301.)

The argument also lacks merit. The expert confirmed that he did not know the defendant, the victims, or the facts of the case. He provided a description of the five components of the syndrome, each of which touched upon a behavior exhibited by one or more of the victims. His testimony on direct examination focused on secrecy and delayed, conflicting, and unconvincing disclosure. The witness also discussed a parent's reaction to a child's disclosure and how the reaction may affect the disclosure. The testimony was appropriately tailored to the misconceptions raised by the victims' testimony, including the secrecy that permeated defendant's relationships with M. and S., defendant's continued access to M. and S., and M.'s initial disclosure to her grandmother several years after the molestations stopped.

Defendant argues the expert testimony was more misleading than helpful because the jury likely drew the impermissible inference that a child who exhibits the behaviors

7

identified by CSAAS has in fact been abused, and the testimony permitted the jury to ignore inconsistencies and lack of detail in statements made by M. and S. This argument is also forfeited because it was not raised in the trial court. (*People v. Seijas*, *supra*, 36 Cal.4th at p. 301.)

Nor are we persuaded by the argument. Juries are capable of "evaluating properly presented references to psychological 'profiles' and 'syndromes' " (*People v. Stoll* (1989) 49 Cal.3d 1136, 1161, fn. 22), and our review of the record shows no improper or misleading testimony. The expert explained that CSAAS was an educational tool, and he repeatedly pointed out that it was not a tool to determine whether a child has or has not been sexually abused. In closing argument, the prosecutor emphasized CSAAS testimony "doesn't mean it happened," and it is the jury's job "to figure that out." She reminded the jury that the purpose of the research is to educate parents and the community about myths that still exist about child sexual abuse. The jury was also instructed that "testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him," and that it may be considered only in deciding whether or not the conduct of the victims "was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of [their] testimony." The testimony was properly admitted, and it did not deprive defendant of his due process right to a fair trial. (*People v. Patino*, *supra*, 26 Cal.App.4th 1737, 1747 ["CSAAS testimony does not by itself deny [] due process"]; *Estelle v. McGuire* (1991) 502 U.S. 62, 69–70 [analogous battered child syndrome evidence does not violate due process].)

Defendant cites federal and other state cases to argue that CSAAS testimony should be deemed irrelevant and inadmissible. Those authorities do not bind this court. (*People v. Johnson* (2015) 61 Cal.4th 734, 763 [lower federal courts]; *People v. Troyer* (2011) 51 Cal.4th 599, 610 [other state courts].) But we are bound by our Supreme Court's express recognition in *McAlpin* that expert testimony on common stress reactions

of children who have been sexually molested is relevant " 'to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior,' " and it is "admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300–1301; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [California Supreme Court decisions "are binding upon and must be followed by all the state courts of California"].)

**B. UNANIMITY INSTRUCTION**

Count 8 charged defendant with "a lewd and lascivious act upon and with the body and certain parts and members thereof of [S.], in [her brother]'s room." S. testified that defendant held her down on her brother's bed, she tried pushing him off and felt like she could not breathe, and he put his hands in her underwear and his fingers in her vagina. He also grabbed her breasts, took off her underwear, licked her vagina, and would not let her go. The prosecutor's closing argument described the incident as follows: "[S.] testified … [s]he's in [her brother]'s room. The defendant is holding her super tight. He's touching her boobs. He's trying to put his hands on her peep. He's trying to put his hand in her underwear. He's trying to lick her. He puts his fingers in her vagina[,] … and she's pushing him away."

Defendant argues the trial court erred by not sua sponte instructing on unanimity for count 8 because the prosecutor identified multiple acts which would support the conviction and the record does not show the jurors agreed to one specific act. We review this instructional issue de novo. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

In criminal cases, a jury verdict must be unanimous, and the jury must agree the defendant is guilty of a specific crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

9

Where "the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid*.) However, an exception to the unanimity rule applies when the defendant tenders the same defense as to each act "and if there is no reasonable basis for the jury to distinguish between them." (*People v. Crandall* (1988) 46 Cal.3d 833, 875.) The exception—which applies when " ' "acts are so closely connected that they form part of one and the same transaction" ' " (*People v. Hernandez*, *supra*, 217 Cal.App.4th at p. 572)—has been applied in sexual assault cases where the acts were perpetrated on the same occasion and within a few minutes of each other. (*People v. Mota* (1981) 115 Cal.App.3d 227, 233–234 [repeated and continuous rape]; see also *People v. Deletto* (1983) 147 Cal.App.3d 458, 469 [two acts of oral copulation performed in different ways]; *People v. Gonzalez* (1983) 141 Cal.App.3d 786, 792 [two rapes committed "within minutes" of each other]; *People v. McIntyre* (1981) 115 Cal.App.3d 899, 910, disapproved on other grounds in *People v. Adams* (1986) 186 Cal.App.3d 75, 80 [two acts of oral copulation "within a matter of minutes"].)

The exception applies here. S. describes several lewd acts occurring in succession as defendant held her down. The acts are so closely connected in time and place that jurors would have no rational reason to convict on one but not another. (*People v. Leffel* (1988) 203 Cal.App.3d 575, 587.) Further, defendant did not advance a different defense as to each act. He tendered the same defense to all the charges involving M. and S.—that the victims were lying. Neither the law nor the defense theory required the jury to distinguish among the successive lewd acts.

Any error in failing to give a unanimity instruction would also be harmless, whether analyzed as federal constitutional error under *Chapman v. California* (1967) 386 U.S. 18, 24, or as state law error under *People v. Watson* (1956) 46 Cal.2d 818, 836. (See *People v. Vargas* (2001) 91 Cal.App.4th 506, 561–562 [noting split of authority on the proper standard for reviewing failure to instruct on unanimity].) Under the

10

heightened *Chapman* standard, error is harmless when "the defendant offered the same defense to all criminal acts[,] and 'the jury's verdict implies that it did not believe the only defense offered.' " (*People v Hernandez*, *supra*, 217 Cal.App.4th at p. 577.) Where, as here, the sole defense is a challenge to the victim's credibility, the error is harmless when " 'the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence.' " (*Ibid*.) Defendant was found guilty of committing all of the sex offenses involving M. and all but one of the sex offenses involving S. The basic credibility dispute was resolved against defendant, and we are therefore convinced beyond a reasonable doubt that the jury would have convicted defendant of any one of the acts encompassed by count 8.

## C. STATUTE OF LIMITATIONS

Defendant was charged in count 10 with theft or unauthorized use of a vehicle under Vehicle Code section 10851, subdivision (a). The statute of limitations for prosecuting a Vehicle Code section 10851 offense is three years. (Pen. Code, § 801.) Defendant argues in his opening brief that there is insufficient evidence of a timely prosecution for the vehicle theft because the offense occurred in November 2010, the information was filed in September 2015, and it is unclear on this record whether tolling would apply to the limitations period. In response to the Attorney General's position that the prosecution was commenced when a bench warrant was issued in 2011, defendant argues that the warrant is not in the record, and no evidence was introduced at trial to prove its existence. He seeks a remand for the trial court to determine whether the vehicle theft charge is barred by the statute of limitations.

A prosecution commences for limitations purposes when a defendant is arraigned on a felony complaint, an indictment or information is filed, or "[a]n arrest or bench warrant is issued provided the warrant names or describes the defendant with the same

11

degree of particularity required for an indictment, information, or complaint." (Pen. Code, § 804, subds. (a), (c), (d).)  A convicted person may raise the statute of limitations in the first instance on appeal when the charging document indicates on its face that the action is time-barred.  (*People v. Williams* (1999) 21 Cal.4th 335, 341.)  If the statute of limitations is raised for the first time on appeal, the appellate court reviews the record to determine whether the crime was charged within the applicable limitations period. (*People v. Smith* (2002) 98 Cal.App.4th 1182, 1193.)  Where the reviewing court cannot determine from the available record whether the action is time-barred, the matter is properly remanded for a hearing in the trial court.  (*Williams*, at p. 341.)

A remand is not necessary here because ample evidence in the record shows that an arrest warrant naming defendant and encompassing the vehicle theft charge was issued on June 7, 2011.  Although the warrant itself is not part of the record on appeal, our record includes the initial felony complaint filed June 7, 2011, naming Noe Calderon Quintero as defendant and charging defendant with theft or unauthorized use of a Nissan Altima on or about November 27, 2010.  The complaint in the record includes a request for an arrest warrant, with a notation that a no bail warrant was received for service by law enforcement on June 29, 2011.

Defendant raised the statute of limitations as to count 10 by demurring to the first amended information in the trial court, and the prosecution argued that a warrant had issued within the limitations period.  The prosecution filed a warrant query report with its opposition to defendant's demurrer, showing a warrant issued for Noe Calderon Quintero on June 7, 2011 for the offenses charged in the complaint.  That report includes the docket number assigned to the felony complaint, as well as the names of the complaining and investigating officers shown on the complaint.  (The trial court denied the demurrer without prejudice as to count 10, finding a demurrer to be an improper vehicle for raising the statute of limitations "to an information which is clearly not the first document that is filed in a case.")  Defendant's arrest and disposition history included in the probation

report also shows a warrant for defendant's arrest issued on June 7, 2011 under the same docket number. We therefore reject defendant's argument that the prosecution commenced outside of the three-year limitations period for theft or unauthorized use of a vehicle.

## D. PENALTY ASSESSMENTS

Defendant argues and the Attorney General concedes that the judgment must be modified to correct the penalty assessments associated with two fines. The trial court imposed a $300 fine plus penalty assessments under Penal Code section 290.3, and a $70 fine plus penalty assessments under Penal Code former section 288a, subdivision (m). The court's minutes and abstract of judgment show the corresponding penalty assessments calculated at $930 and $217, respectively. Seven penalties are assessed against each fine (see footnote 2, *post*), including a DNA identification fund penalty under Government Code section 76104.7, subdivision (a). Defendant was assessed a 40 percent DNA identification fund penalty. But defendant was convicted of offenses occurring in 2010 and earlier. In 2010, the Government Code imposed a 30 percent DNA identification fund penalty. (Gov. Code, former § 76104.7, subd. (a).) The penalty was raised to 40 percent in 2012. (Stats. 2012, Ch. 32, § 25.) Under ex post facto principles, the penalty assessment must be reduced to conform to the statute in effect at the time of defendant's crime. (*People v. Soto* (2016) 245 Cal.App.4th 1219, 1239–1240.)

We deem the collective $930 and $217 penalty assessments entered on the court's minutes and abstract of judgment to be clerical error. (See *People v. Hong* (1998) 64 Cal.App.4th 1071, 1075.) We will modify the judgment to reflect a 30 percent DNA identification fund penalty under Government Code section 76104.7, subdivision (a), and direct the trial court to correct the minutes and abstract of judgment to reflect the corrected assessments totaling $900 and $210.

Because the trial court did not specify the amount and statutory basis for each penalty assessment, we will direct the superior court clerk to include in the corrected

13

minutes and abstract of judgment the seven statutory penalty assessments attached to each fine.[2]  (*People v. Hamed* (2013) 221 Cal.App.4th 928, 937–940 [requiring abstract of judgment to include amount of and statutory basis for penalty assessments]; *People v. Sharret* (2011) 191 Cal.App.4th 859, 864 (recognizing clerk's responsibility to specify the penalties and surcharges in appropriate amounts in the minutes and abstract of judgment].)

### III.  DISPOSITION

The judgment is affirmed.  The superior court clerk is directed to correct the minutes and abstract of judgment to include the seven penalty assessments corresponding to the $300 fine imposed under Penal Code section 290, and the $70 fine imposed under Penal Code former section 288a, subdivision (m), totaling $900 and $210, respectively. The corrected minutes and abstract of judgment shall including the amount of and statutory basis for each assessment as noted in this opinion.  The superior court clerk shall transmit a copy of the corrected minutes and abstract of judgment to the Department of Corrections and Rehabilitation.

---

[2] The seven penalty assessments corresponding to the $300 fine are: (1) a $300 state penalty assessment (Pen. Code, § 1464, subd. (a)(1)); (2) a $60 state surcharge (Pen. Code, § 1465.7); (3) a $150 state court construction penalty (Gov. Code, § 70372); (4) a $210 additional penalty (Gov. Code, § 76000, subd. (a)(1)); (5) a $60 penalty for emergency medical services (Gov. Code, § 76000.5, subd. (a)(1)); (6) a $30 DNA penalty (Gov. Code, § 76104.6, subd. (a)(1)); and (7) an additional $90 DNA penalty (Gov. Code, § 76104.7, subd. (a)).  The seven penalty assessments for the $70 fine are: (1) a $70 state penalty assessment (Pen. Code, § 1464, subd. (a)(1)); (2) a $14 state surcharge (Pen. Code, § 1465.7); (3) a $35 state court construction penalty (Gov. Code, § 70372); (4) a $49 additional penalty (Gov. Code, § 76000, subd. (a)(1)); (5) a $14 penalty for emergency medical services (Gov. Code, § 76000.5, subd. (a)(1)); (6) a $7 DNA penalty (Gov. Code, § 76104.6, subd. (a)(1)); and (7) an additional  $21 DNA penalty (Gov. Code, § 76104.7, subd. (a)).

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P. J.

_____

Bamattre-Manoukian, J.

**H045232 -** *The People v. Quintero*